(No. 52362.—

MICHAELANGELO J. PALELLA *et al.,* Appellants, v. LEYDEN FAMILY SERVICE & MENTAL HEALTH CENTER *et al.,* Appellees.

*Opinion filed March 28, 1980.—Rehearing denied May 29, 1980.*

A. E. Botti and John N. Pieper, of Wheaton, for appellants.

Matthew J. Piers and David C. Thomas, of Chicago, for appellees.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, all of whom are residents of the village of Villa Park, brought this action in the circuit court of Du Page County seeking to enjoin the operation of a "non-medical detoxification center" in Villa Park by defendants, Leyden Family Service & Mental Health Center (Leyden), West Suburban Detoxification Center (WSDC), Donald Goncher and Acre View, Inc., and seeking a writ of *mandamus* to compel the village of Villa Park, the village president and manager to comply with the governing ordinance and hold a public hearing on whether to permit the detoxification center. The circuit court entered an order enjoining the use of the property in question as a detoxification center and denied plaintiffs' prayer for *mandamus*. The circuit court awarded plaintiffs' attorney's fees to be paid by the village but denied plaintiffs' request that attorney's fees be assessed against Leyden and WSDC. Pursuant to a stipulation between plaintiffs and the village, the order awarding attorney's fees was vacated and the village was dismissed from the cause with prejudice. Defendants Leyden and WSDC appealed from the judgment ordering the injunction, and plaintiffs appealed from the order denying attorney's fees. The appellate court reversed the injunction (73 Ill. App. 3d 134) and did not reach the issue of attorney's fees. We allowed plaintiffs' petition for leave to appeal. The facts are adequately set forth in the appellate court opinion and will be stated here only to the extent necessary to discuss the issues.

Acre View, the premises involved in this controversy, was annexed to the village of Villa Park in 1967. On

November 6, 1967, in accordance with a preannexation agreement, and pursuant to its zoning ordinance (No. 861, later amended by No. 1195), which required action by the board of trustees on applications for special use permits, the defendant village adopted an ordinance (No. 1019) granting a special use permit for use of the premises as a nursing and convalescent home. The ordinance provides in part:

> "2. This special use permit is hereby granted under the provisions of Village Ordinance No. 861, Section 25—10, A(h). The petitioners shall be permitted to operate a private nursing and convalescent home on the premises herein described. Said nursing and convalescent home shall not be converted to a hospital, nor to an institution for the care of the insane or feeble minded, but shall continue to operate under a special use permit under the same or similar conditions to those existing at the time of the annexation of said Acre View Nursing Home and located on the premises.
> 3. The term of this special use permit shall be for as long a period of time as the property is being used for present nursing home and convalescent purposes and shall expire upon a termination of the use of the property or any portion thereof for such purposes."

Included in the special uses enumerated in Ordinance No. 861 were "hospitals or sanitariums" and "institutions for the care of the insane or feeble-minded."

In 1978, Donald Goncher, the administrator of Acre View, sought the opinion of the village officials as to whether a day-care center for older adults was a permitted use within the terms of the special use permit. The village manager responded by letter that the "conversion of Acre View from a nursing home operation to an Adult Day Care Center appears to be within the scope of your special use permit and in accordance with the definitions set forth in our Village ordinance No. 1195 [the general zoning ordinance]." After commencing to operate Acre View as an adult day-care center, Goncher was approached by defend-

ant Leyden, a not-for-profit, publicly funded organization, about the possibility of using a portion of Acre View as a nonmedical detoxification center, to be known as West Suburban Detoxification Center. Such a facility would use various nonmedical means to treat voluntary admittees for a period of up to five days for intoxication and alcoholism. One of the two buildings on the property was leased to Leyden.

Goncher testified that an attorney for WSDC contacted the village authorities to determine whether the intended use was permitted. The matter was referred to the village attorney and was considered at a regular meeting of the village board of trustees held on June 26, 1978. The minutes of the meeting reflect the village attorney's opinion:

> "Attorney Faris reviewed Ordinance No. 1019 regarding the Special Use for Acre View Nursing Home. He advised that it is his legal opinion that the detoxification center does come under the purview of the Ordinance."

A number of residents of the village addressed the board, both for and against the proposed detoxification center. However, no formal board action was taken with regard to the proposed use. The minutes contain this final reference to the matter:

> "Attorney Faris to investigate whether the Nursing Home license had been suspended or whether Special Use Ordinance is still in effect."

Plaintiffs, all of whom live within 1,200 feet of Acre View, based their complaint for injunction and *mandamus* on section 11–13–15 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11–13–15), which provides:

> "Sec. 11–13–15. In case any building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure, including fixtures, or land, is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordi-

nance or other regulation made under the authority conferred thereby, the proper local authorities of the municipality, or any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation. When any such action is instituted by an owner or tenant, notice of such action shall be served upon the municipality at the time suit is begun, by serving a copy of the complaint on the chief executive officer of the municipality, no such action may be maintained until such notice has been given.

In any action or proceeding for a purpose mentioned in this section, the court with jurisdiction of such action or proceeding has the power and in its discretion may issue a restraining order, or a preliminary injunction, as well as a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes set forth above.

If an owner or tenant files suit hereunder and the court finds that the defendant has engaged in any of the foregoing prohibited activities, then the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney. This allowance shall be a part of the costs of the litigation assessed against the defendant, and may be recovered as such.

An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions."

Following a hearing the circuit court found that the defendant village had taken no action with respect to the disputed use, that the opinion of the village attorney was not the act of the village, and that the action of the

defendants Leyden, WSDC, Goncher and Acre View, Inc., were undertaken without objection or interference from the village. The court further found "that there is no similarity between the operation of the facility as a convalescent or nursing home under the permitted special use permit and the operation of a detoxification center." It ordered that an injunction issue enjoining defendants from using the premises "as an alcoholic detoxification center and further from accepting patients or clients at said premises excepting that said defendants shall have first applied to the defendant Village of Villa Park, a municipal corporation, and been granted as provided by ordinance and law, a special use permit or other official enactment for the operation of such alcoholic detoxification center." It denied plaintiff's prayer for *mandamus* and awarded plaintiff attorney's fees to be paid by the village in the amount of $4,707.50.

Subsequently, on stipulation of the parties, the order awarding attorney's fees was vacated and the village was dismissed as a party defendant.

We consider first plaintiff's contention that the appellate court decision "is premised in part upon an erroneous interpretation and extension of the home rule powers granted to municipalities by article VII, section 6 of the Illinois Constitution of 1970." The appellate court, after noting the trial court's characterization of the village's part in this dispute as mere "non-action," said: "We think it fair to say then that the village did make a decision ***." (73 Ill. App. 3d 134, 140.) In determining how much weight to give the "decision" of the village authorities to permit operation of the detoxification center, the appellate court said:

"[I]n dealing with a situation which is so peculiarly susceptible to the exercise of home-rule powers as a zoning matter is and particularly in dealing with a zoning problem which has no prece-

dent because it involves a use which is new, experimental and not contemplated at the time of the zoning code's enactment, the interpretation of the legislative body's challenged ordinance should carry a great deal of weight.

While, therefore, the court has the final determination and can override the legislative body's interpretation if it is necessary to do so in order to serve justice and uphold the law, yet we think, especially in the case of a home-rule municipality's zoning ordinance, the error should be clear and the injustice substantial, before the legislative interpretation is overthrown by issuance of an injunction. We do not regard this as such an open and shut case." 73 Ill. App. 3d 134, 141.

We find it unnecessary to decide whether the defendant village made a legislative determination sufficient to constitute an exercise of the home rule power under section 6, article VII, of the Constitution of 1970. (See *Gilligan v. Korzen* (1974), 56 Ill. 2d 387, 390.) Nor need we determine whether the village did "make a decision" to allow the detoxification center or the precise weight to be accorded such a "decision." Assuming, *arguendo,* that the village affirmatively exercised some aspect of its home rule power and that it construed its special use ordinance as permitting the detoxification center, nevertheless, such action would not be controlling. A legislative body, including the board of trustees of a home rule village, is without power to say how the judiciary shall construe a legislative enactment. (See *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 338.) In our view, the ordinance in question clearly does not permit the operation of defendants' detoxification center, and any construction by the village to the contrary is not persuasive.

The special use ordinance permits only the operation of "a private nursing and convalescent home" on the

premises. It prohibits converting the nursing home to a hospital or "institution for the care of the insane or feeble-minded." It provides for continued operations "under the same or similar conditions to those existing at the time of annexation ***." Finally, and unequivocally, the ordinance specifies that the term of the special use permit "shall be for as long a period of time as the property is being used for present nursing home and convalescent purposes; and shall expire upon a termination of the use of the property or any portion thereof for such purposes."

In *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 520, this court, in stating the rule applicable to the construction of zoning ordinances, said:

"Effect should be given to the intention of the drafters by concentrating on the terminology, its goals and purposes, 'the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance. [Citation.] "

The special use ordinance shows the intent to restrict the permissible uses of the premises to those which existed at the time of annexation. That portion of the property devoted to the nonmedical detoxification center has ceased to be used for "nursing home and convalescent purposes." We are not persuaded, as was the appellate court, that because "the fundamental objective in both cases [nursing home and detoxification center] is the rehabilitation of a sick human being in mind and body or both" (73 Ill. App. 3d 134, 142), the newer use is permitted. The ordinance focuses on "termination" of use as a nursing and convalescent home. As the circuit court said in its order, "it is clear that there is no similarity between the operation of the facility as a convalescent or nursing home under the permitted special use permit and the operation of a detoxification center." Use as a nursing and convalescent home has terminated and, accordingly, the

trial court was correct in entering the order enjoining a violation of the ordinance.

Citing *Meyer v. Marshall* (1976), 62 Ill. 2d 435, plaintiffs contend that "the allowance of attorneys fees to plaintiffs who are successful in an action under section 11—13—15 is mandatory based on a finding that the defendants have engaged in prohibited activity."

In *Meyer* the trial court granted the plaintiffs a permanent injunction based on section 11—13—15 and taxed costs and attorney's fees against the defendants. The appellate court held that the issue of the propriety of the injunction had become moot, that the injunction nevertheless was improperly issued and that the plaintiffs were not entitled to costs and fees. After noting that a 1969 amendment (1969 Ill. Laws 1236) to section 11—13—15 made the allowance of attorney's fees mandatory rather than discretionary, this court held that the appellate court erroneously inquired into the propriety of the injunction and erroneously set aside the award of costs and attorney's fees. (62 Ill. 2d 435, 439, 442.) The circuit court determined that the operation of a detoxification center was not within the scope of the special use permit granted by the ordinance in question here. In such circumstances, the taxing of attorney's fees was mandatory against the defendants who have engaged in the "prohibited activity."

Defendants contend that "plaintiffs now seek to get from Defendants-Appellants the fees which they gave up from the Village." We note that there is no indication and no finding that the village engaged in any of the prohibited activities set out in section 11—13—15. Defendants also argue that it would be inequitable to award attorney's fees since they acted in good-faith reliance on the village's decision. Section 11—13—15 permits an action either by the "proper local authorities" of a municipality or by any owner or tenant who lives within 1,200 feet. This provision clearly contemplates an action by owners or tenants

when the municipality has not enforced its ordinances. We hold that proof of reliance on a municipality's ordinance-enforcement posture does not obviate the mandatory provision for attorney's fees contained in the section.

Defendants contend that because the circuit court did not assess costs the provision of section 11—13—15 that "This [attorney's fees] allowance shall be a part of the costs of the litigation assessed against defendant, and may be recovered as such," precludes the award of attorney's fees. They argue that because plaintiffs did not appeal from the circuit court's decision not to award costs, the question of attorney's fees is not before this court. We do not agree. Because the circuit court ruled on multiple counts, the assessment of costs was discretionary (Ill. Rev. Stat. 1977, ch. 33, par. 12), but the award of attorney's fees was mandatory. *Meyer v. Marshall* (1976), 62 Ill. 2d 435, 441-42.

For the reasons stated the judgment of the appellate court is reversed and the cause is remanded to the circuit court of Du Page County to determine the amount of a reasonable fee for the services of plaintiffs' attorney in obtaining the order of injunction against defendants, Leyden Family Service & Mental Health Center, West Suburban Detoxification Center, Donald J. Goncher and Acre View, Inc.

*Appellate court reversed;*
*cause remanded,*
*with directions.*