THE VILLAGE OF MAYWOOD, Plaintiff-Appellant, *v.* HEALTH, INC., *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-2544

Opinion filed February 5, 1982.—Rehearing denied April 13, 1982.

Sanford M. Stein and Ronald S. Cope, both of Ancel, Glink, Diamond, Murphy & Cope, P. C., of Chicago, for appellant.

D. Adolphus Rivers and Harry P. Bush, both of Rivers, Smith & Bush, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

The Village of Maywood (Maywood) sought to enjoin defendants from operating a methadone clinic allegedly in violation of the village zoning ordinance. The trial court found that the methadone clinic was a permitted use under the ordinance, and denied injunctive relief.

The issues on appeal are: (1) whether the methadone clinic is a permitted use under the Maywood ordinance, (2) whether Maywood is estopped from enforcing its zoning ordinance because it had previously issued various building permits to defendants, (3) whether judicial interpretation of the zoning ordinance is affected by an interpretative resolution passed by the village after this litigation commenced, (4) whether the trial court erred in excluding certain evidence and (5) whether portions of defendants' brief should be disregarded because points and authorities listed are not referred to or argued in the body of the brief.

The subject property is located at 308 South Fifth Avenue in Maywood, Illinois. The area is zoned "B-4 Office and Residential." Included among the permissible uses for this area are the following:

"8.4 *B-4 Office and Residential District*
8.4—1 *Permitted Uses.* The following uses of land or buildings are permitted:

* * *

Offices of professional persons such as physicians, dentists, health practitioners (but not including veterinarians), attorneys, architects and engineers, and including outpatient medical and dental clinics, but not hospitals.

* * *."

Section 4.12 of the Maywood zoning ordinance states that a use is prohibited if it is not listed as permitted.

The property was formerly used as a family alcoholic abuse center. Health, Inc., operates an outpatient drug rehabilitation program on the leased premises. Their methadone clinic combines methadone maintenance, detoxification, and group and single therapy sessions for a case load of approximately 90 patients. The staff includes medical doctors, licensed practical nurses and counselors. It provides social, legal and educational services in addition to job training and procurement.

Health, Inc.'s program is Federally, State and locally funded. It is licensed, maintained and supervised by the United States Department of Justice, the Drug Enforcement Administration, and the Illinois Dangerous Drug Commission.

On June 8, 1979, Health, Inc., applied for and received a building permit to renovate the subject property for its methadone clinic. The village issued a certificate of completion for that work on July 30, 1979. Shortly thereafter, Maywood notified defendant that operation of a methadone clinic required a special use permit. On September 4, 1979, the Maywood Plan Commission conducted a public hearing on Health's application for a special use permit.

The Plan Commission found that the program was Federally, State and locally funded, was maintained by the Illinois Dangerous Drug Commission, and worked in connection with Westlake Hospital. They found that the program exists by virtue of the Illinois Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.1 *et seq.*), which declares that it is the public policy of the State to establish programs to provide treatment and rehabilitation for controlled substance addicts. The Plan Commission then recommended that a special use permit be granted. The board of trustees rejected this recommendation and directed that Health, Inc., cease its operation.

On November 21, 1979, Maywood filed suit alleging: (1) that defendants' clinic was a nonpermitted use, (2) that defendants were in violation of Village off-street parking requirements, (3) that defendants'

activities constituted a nuisance, and (4) that defendants' operation of the clinic was *ultra vires* conduct which exceeded the limitations of its corporate charter. The latter count was stricken prior to trial.

On April 10, 1980, the Village of Maywood passed Maywood Resolution No. R 80-9, "A Resolution Interpreting Section 8.4 of the Maywood Zoning Ordinance, as amended." It states in pertinent part that the Maywood Zoning ordinance does not provide for a methadone clinic as either a permitted or special use in the B-4 Office and Residential District, as thereby retroactively interpreted by the village board of trustees.

Prior to trial, Maywood requested that Health, Inc., produce a copy of its floor plans pursuant to Supreme Court Rule 237 (Ill. Rev. Stat. 1979, ch. 110A, par. 237). Health, Inc., responded that the plans were not relevant. At the onset of trial, Maywood asked the court to instruct Health, Inc., to produce the requested documents. The court noted that Maywood was told to dispose of the matter in the pretrial hearing and should not have waited until trial began. The court indicated that if the floor plans became essential during the trial, then the court would take the matter under advisement at that time.

During the trial, the court excluded expert testimony of a land use and zoning specialist and of a forensic toxicologist offered by Maywood. The excluded testimony by the land use and zoning expert related to the nature of the surrounding uses in the B-4 district. The excluded testimony by the forensic toxicologist concerned the character of a methadone clinic as a permitted use and whether methadone use can be lethal.

Following a bench trial, the trial court held that Health, Inc.'s, methadone clinic was a permitted use under Section 8.4, B-4. The count alleging off-street parking violations was stricken for lack of proof. The trial court found that defendants' activities did not constitute a nuisance. The trial court then denied injunctive relief. The issue of nuisance was not presented on appeal.

In its appellate brief, plaintiff accurately points out that points and authorities listed in defendants' brief are not argued in the body of the brief. Plaintiff argues that this violates Supreme Court Rules 341(e)(5) and 341(f) (Ill. Rev. Stat. 1979, ch. 110A, par. 341). Plaintiff urges this court to disregard those cases.

OPINION

At the threshold, we consider plaintiff's argument that we should disregard, as authority, the cases which defendants have included in their list of points and authorities. These cases are not referred to or argued in the body of defendants' brief. Plaintiff points out that this violates Supreme Court Rules 341(e)(5) and 341(f) (Ill. Rev. Stat. 1979, ch. 110A,

par. 341). We agree that it is of little value to the court to be provided with a mere list of cases to be considered in support of a trial court judgment.

The appellate court will not consider a point that has not been argued unless its responsibility for a just result and for maintenance of a sound and uniform body of precedent dictates otherwise. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.) This rule of practice is applicable to appeals in this court under the Administrative Review Act. *Kaminski v. Illinois Liquor Control Com.* (1974), 20 Ill. App. 3d 416, 314 N.E.2d 290.

■■ Even in a case where the appellee failed to file its brief, it was held that a considered judgment of the trial court should not be set aside without some consideration of the merits of the appeal. (*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.) In the interest of justice, we therefore exercise our discretionary authority to consider the portions of defendants' brief where points cited are not argued.

We next consider whether an interpretative resolution passed by the village after this litigation commenced will control our construction of section 8.4, B-4. The resolution was passed on April 10, 1980, subsequent to the institution of this suit. It states in relevant part that the Maywood zoning ordinance does not provide for or include methadone maintenance and detoxification centers as either permitted or special uses in the B-4 Office and Residential District, as retroactively interpreted by the board of trustees.

It is Maywood's position on appeal that the intent of the board of trustees of a home-rule village is expressed in this resolution. Therefore, according to Maywood, the resolution ought to guide our decision as to the meaning of section 8.4 with respect to methadone maintenance programs.

■■ The rules of statutory construction provide that interpretative regulations by those charged with enforcing a statute are entitled to great weight. (2A A. Sutherland, Statutory Construction §49.05 (4th ed. 1973).) However, as the supreme court recently stated, a legislative body, including the board of trustees of a home-rule village, is without power to say how the judiciary shall construe a legislative enactment. (*Palella v. Leyden Family Service & Mental Health Center* (1980), 79 Ill. 2d 493, 404 N.E.2d 228.) It is well settled that the judicial power is vested solely in the courts, and the legislative branch is without authority to state explicitly how the judiciary shall construe a statute. *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 291 N.E.2d 648.

Therefore, we do not regard the board of trustees' interpretative resolution as controlling in the present case.

We now consider the principal issue in this appeal.

Plaintiff contends that the trial court erred in finding defendants' use to be permissible under the ordinance. We disagree.

The relevant portion of section 8.4 of the Maywood zoning ordinance shows that the following uses are permitted:

"Offices of professional persons such as physicians, dentists, health practitioners (but not including veterinarians), attorneys, architects and engineers, and including outpatient medical and dental clinics, but not hospitals."

Section 4.12 of the Maywood zoning ordinance states that when a use is not specifically listed in the sections devoted to permitted uses, it is prohibited. (Health, Inc.'s, methadone clinic does not meet the definition for "medical clinic" as set forth in the Maywood zoning ordinance because it does not employ the requisite number of doctors.)

Health, Inc., contends that their program is included under the description "Office of professional persons * * * such as health practitioners." We agree.

It is well settled that courts must construe a zoning ordinance in the same fashion as a statute and thus give effect to the intentions of the drafters. (*Niles Improvement Association v. J. Emil Anderson & Son, Inc.* (1968), 93 Ill. App. 2d 167, 236 N.E.2d 402.) In analyzing a zoning ordinance, effect should be given to the intention of the drafters by concentrating on the terminology, its goals and purposes, the natural import of words used in common and accepted usage, the setting in which they are employed and the general structure of the ordinance. *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21.

■■ We also note that zoning ordinances are in derogation of the common law so that any ambiguity or uncertainty must be decided in favor of the property owner. (*Herrington v. County of Peoria* (1973), 11 Ill. App. 3d 7, 295 N.E.2d 729.) When not otherwise required by the ordinance, the property owner should be able to rely on terms used in a zoning ordinance as meaning what they are commonly understood to mean. *County of Lake v. Gateway Houses Foundation, Inc.* (1974), 19 Ill. App. 3d 318, 311 N.E.2d 371.

■ Health, Inc.'s in-house staff includes professional persons such as doctors and nurses. It is equally clear that the methadone clinic provides both physical and mental health care to its patients. The trial court properly concluded that the methadone clinic is an office of professional persons such as health practitioners.

Plaintiff directs our attention to the case of *Palella v. Leyden Family Service & Mental Health Center* (1980), 79 Ill. 2d 493, 404 N.E.2d 228. In *Palella*, neighbors of a nonmedical detoxification center sued to enjoin its

operation. The center was located on the former site of a nursing home. The nursing home had operated under a special use permit which allowed only a nursing home to exist on the property. The permit specifically stated that it would expire when the premises were no longer used for a nursing home. The supreme court held that the terms of this special use permit showed a legislative intent to restrict the permissible uses to the use existing at the time of its issuance.

*Palella* is distinguishable from the present case because defendants' methadone clinic did not violate the terms of an existing special use permit. Our search of the record does not reveal that the former use of the property for an alcoholic abuse center required a special use permit. Neither was it shown that operation of defendants' methadone clinic violated any existing special use permit provisions. In the ordinance before the *Palella* court, the restriction was as clear as words could make it. In the present case, no such restriction is present. Hence, the inappositeness of this case as authority.

Similarly, we are not persuaded by Maywood's argument that the rule in *Williams v. City of Bloomington* (1969), 108 Ill. App. 2d 307, 247 N.E.2d 446, applies here.

In *Williams*, the zoning ordinance provided that if a particular use was not set forth, it was prohibited. There, a lot zoned for single-family residence was being used as a driveway for ingress and egress to an adjoining apartment dwelling. The court held that such use was clearly prohibited.

In the present case, the applicable ordinance also prohibits any use that is not specifically set forth. Here, however, since we concluded that the methadone clinic is an office of professional persons such as health practitioners, the use is specifically set forth. Therefore, the prohibition does not apply.

As the *Williams* court stated, "If such and such a use is *not* set forth, it is prohibited. The express uses, of course, must be read to include reasonably implied ones." (*Williams v. City of Bloomington* (1969), 108 Ill. App. 2d 307, 311.) We believe that Health, Inc's operation of a methadone clinic is included in the express permitted use "Office of professional persons * * * such as health practitioners."

As an independent ground supporting our decision, we refer to the stated policy of the State of Illinois as embodied in section 2 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1979, ch. 91½, par. 120.2), which states:

> "It is the public policy of this State that the human suffering and social and economic loss caused by addiction to controlled substances * * * are matters of grave concern to the people of the State. It is imperative that a comprehensive program be established

and implemented through the facilities of the State, counties, municipalities, the Federal Government, and local and private agencies to prevent such addiction and abuse; * * * and to provide diagnosis, treatment, care and rehabilitation for controlled substance addicts to the end that these unfortunate individuals may be restored to good health and again become useful citizens in the community."

Constitutionally valid legislation that is enacted in response to current demands serves as an extremely valuable evidentiary source of public policy. 2A A. Sutherland, Statutory Construction §56.02 (4th ed. 1973).

Furthermore, considerations having to do with public policy exert a significant influence in the process of statutory interpretations, since the tendency of the courts has always been to favor interpretations which are consistent with public policy. Sutherland, at 403. See also Comment, *Exclusion of Community Facilities for Offenders and Mentally Disabled Persons: Questions of Zoning, Home Rule, Nuisance and Constitutional Law*, 25 De Paul L. Rev. 918 (1976).

In the present case, we believe that Health, Inc.'s methadone clinic not only qualifies as a permitted use within the zoning ordinance, but its continuing existence is advocated by the public policy of the State of Illinois.

In light of our determination, we do not reach the issue of the presumptive validity of the Maywood ordinance. Similarly, we do not reach the issue of whether plaintiff is estopped from enforcement of its zoning ordinance due to the prior issuance of various building related permits to defendant.

Maywood next argues that the court erred in not granting its motion, at the onset of trial, to compel production of defendants' floor plans pursuant to Supreme Court Rule 237 (Ill. Rev. Stat. 1979, ch. 110A, par. 237). Maywood contends that these plans are necessary to prove violation of the zoning ordinance's off-street parking requirements.

Our search of the record shows that the court, after admonishing counsel that this matter was to have been disposed of prior to the commencement of trial, took the matter under advisement. The record fails to show any subsequent ruling or request by the plaintiff concerning this motion.

It is well established that when the court reserves a ruling, the movant must seek a decision or ruling in order to preserve the motion for review. *In re Annexation to Village of Downers Grove* (1974), 22 Ill. App. 3d 122, 316 N.E.2d 804; *Trisko v. Vignola Furniture Co.* (1973), 12 Ill. App. 3d 1030, 299 N.E.2d 421.

■■ Where a trial court does not rule on a motion to apply sanctions to

plaintiff for not complying properly with an order for production of documents, the question of the trial court's failure to apply sanctions is not before the appellate court on review. (*Walls v. Jul* (1969), 118 Ill. App. 2d 242, 254 N.E.2d 173.) In the absence of a ruling here, we have nothing to review.

Finally, Maywood contends that expert testimony by a land-use expert and forensic toxicologist was improperly excluded by the trial court. The testimony offered by the land-use expert related to the dissimilarity of zoning districts in Maywood, the pattern of development along Fifth Avenue, and the lessening of commercial functions in the B-4 district. The forensic toxicologist's testimony concerned the character of a methadone clinic as a permitted use and the lethality of methadone.

Relevance is established when a fact offered tends to prove a fact in controversy or renders a matter in issue more or less probable. *Bell v. City of Joliet* (1980), 83 Ill. App. 3d 103, 403 N.E.2d 740.

In determining whether the testimony of any witness has any probative value, testimony must be measured against the factual issues raised in the case. *Simon v. Lumbermen's Mutual Casualty Co.* (1977), 53 Ill. App. 3d 380, 368 N.E.2d 344.

■█ The critical issue raised in the present case is whether a methadone clinic is a permitted use under the ordinance. The proferred testimony relates to the nature of surrounding uses and the medical properties of methadone. We do not agree that such testimony has any relation to the dispositive issue in this case. It is not error to exclude testimony which does not reasonably bear upon the specific issue under consideration in the judgment of the trial court. *Eleopoulos v. Dzakovich* (1981), 94 Ill. App. 3d 595, 418 N.E.2d 980.

We conclude that the trial court did not err in excluding the experts' testimony.

For the reasons stated the judgment of the circuit court is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.