PAUL D. BECKMAN ET AL., APPELLANTS, V. CITY OF GRAND ISLAND, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLEES, CENTRAL NEBRASKA COUNCIL ON ALCOHOLISM, INC., A CORPORATION, INTERVENER-APPELLEE.

157 N. W. 2d 769

Filed March 29, 1968. No. 36745.

Wagoner & Grimminger, for appellants.

James L. Parmelee, Jr., and Duane A. Burns, for appellee.

John R. Higgins, for intervener-appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is an action initiated by the appellants to reverse a decision of the board of adjustment of the City of Grand Island issuing an occupancy permit under the provisions of the zoning regulations of the city.

The intervener, Central Nebraska Council on Alcoholism, Inc., applied for an occupancy permit for premises situated at 406 West Koenig Street, which is located in a B-Residence district. The premises had been used as a funeral home until 1958, for offices for a while thereafter, and were vacant at the time of the application. Appellants' property is located in the vicinity, partially in the B-Residence district and partially in the

B-Business district. The certificate of occupancy was granted by the chief building inspector subject to certain parking and alteration requirements. On appeal, the board of adjustment determined that the proposed use of the, premises as a rehabilitation center for dwelling purposes is permitted under the provisions of the zoning ordinances and regulations of the city. Appellants filed a petition on appeal in the district court under the provisions of section 19-912, R. S. Supp., 1965. The district court affirmed the decision of the board of adjustment and dismissed the appeal.

Appendix I, section 3, of the zoning code applicable to A-Residence districts provides:

"(a) Use. No building or premises shall be used and no building shall be herafter (sic) erected or structurally altered unless otherwise provided in this ordinance, except for one or more of the following uses:

"1. Single family dwelling, two family dwelling.

"2. Church, college, community building, public library, public museum, school. Provided, however, that the word school as used in this section shall not include vocational or trade schools, schools for abnormal adults or children, or institutions other than those required for children to attend, that is elementary secondary as the term is ordinarily used.

"3. Public park, public playground, public recreation building, school or college stadium or athletic field, golf courses.

"4. * * *.

"5. * * *.

"6. Philanthropic institution, other than penal or corrective, hospitals or sanitarium other than for contagious diseases and other than for the insane or feeble-minded.

"7. * * *.

"8. * * *.

"9. Uses customarily incident to any of the above

uses when located on the same lot and not involving the conduct of a business, * * *."

B-Residence district restrictions are contained in Appendix I, section 4, as follows:

"(a) Use. No building or premises shall be used and no building shall be hereafter erected or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following uses:

"(1) Any use permitted in A-Residence District.

"(2) Multiple dwelling.

"(3) Dormitory, sorority or fraternity house; boarding or rooming house.

"(4) Professional office or studio * * *.

"(5) Vocational or trade, school and school or institution of a similar character.

"(6) * * *.

"(7) Uses customarily incident to any of the above uses when located on the same lot and not involving the conduct of a business."

Appendix I, section 1, defines a boardinghouse as: "A building, other than a hotel, where lodging and meals are provided for four or more persons, not members of a family, for compensation."

It was stipulated that the hearing was not based on any question of nuisance per se, but was based solely on the zoning ordinance. The, basic issue is, therefore, whether the issuance of the occupancy permit was in contravention of the zoning regulations of the City of Grand Island.

Central Nebraska Council on Alcoholism, Inc., proposes to use the premises for what is referred to as a rehabilitation center or recovery house for alcoholics where room and board would be furnished. The ordinary occupancy of the house would include 5 to 30 men. Individuals residing on the premises would be, charged a flat weekly rate. Admission will be strictly voluntary and residents are free to leave at any time. Residents must want to come to the house, must want to

help themselves with their alcoholism problem, and must be recoverable so that they will become self-sufficient. The center would help the residents get a job. The house would provide an alcohol-free environment in which the men can live. It will also provide a balanced menu and living quarters and meaningful human relationship as a vital part of recovery from alcoholism. Residents are described as detoxified alcoholics. No psychotics or acute chronic alcoholics will be admitted. The manager is to be a recovered alcoholic and the philosophy of Alcoholics Anonymous is to be used for counseling on the premises. The center provides no psychiatric or individual therapy or medical dispensation. The center would not pay doctor or hospital bills or provide such services for the residents.

Zoning laws should be given a fair and reasonable construction in the light of the manifest intention of the legislative body, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the law as a whole. State v. Smiley, *ante* p. 211, 153 N. W. 2d 906.

In interpreting the language of the ordinance to determine the extent of the restriction upon use of the property, the language must be interpreted, where doubt exists as to the intention of the legislative body, in favor of the property owner and against any implied extension of the restriction. 1 Rathkopf (3d Ed.), The Law of Zoning and Planning, 8-1.

The zoning regulations applicable here permitted philanthropic institutions, other than penal or corrective; hospitals or sanitariums, other than for contagious diseases or other than for the insane or feeble-minded; dormitories; sorority or fraternity houses; professional offices or studios; and vocational or trade schools and schools or institutions of a similar character. These were all in addition to boarding or lodginghouses specifically defined in the regulations.

Here the burden of proof was on the appellants to establish that the proposed use of the premises was in violation of the zoning ordinances. Essentially, the appellants' position is that although the use here concededly met all the criteria specified in the regulations defining a boardinghouse, this was not enough. It is contended that the motivation or purpose which underlies the establishment of the facility reflected in the name "rehabilitation center," is primary, and that the use of the premises as a boardinghouse is only incidentally necessary in accomplishing the actual purpose. The thrust of appellants' argument is that the regulations do not specifically mention a rehabilitation center for alcoholics and that a boardinghouse with a specified purpose and program is therefore excluded. Carried to its logical conclusion, the appellants' argument is that if the purpose motivating the use, or the use itself, does not in all respects fit the usual concept of a specified permissive use, it is prohibited, even though it constitutes a combination of permitted uses. We cannot agree.

The name by which an institution is designated or called is not of controlling importance in determining whether or not it is a permissible use under a zoning ordinance. The question is to be determined by the activities or character of the business or services carried on and not by the name. See, Annotation, 64 A. L. R. 2d 1167, at page 1168; Crain v. City of Louisville, 298 Ky. 421, 182 S. W. 2d 787.

Although we are not cited to any cases involving a residential rehabilitation center for alcoholics, factual situations involving other special interest groups living together have been considered by the courts. The specific descriptive words or definitions considered have included boarding and lodginghouses, club houses, clubs, fraternities, sororities, dormitories, etc. See, United Cerebral Palsy Assn. v. Zoning Board of Adj., 382 Pa. 67, 114 A. 2d 331 (young men suffering from cerebral palsy living together as club house or dormitory); City

of St. Louis v. Art Publication Society (Mo.), 203 S. W. 2d 902 (dormitory or sorority house for young women music students as boarding or lodginghouse); City of Gulfport v. Daniels, 231 Miss. 599, 97 So. 2d 218, 64 A. L. R. 2d 1161 (children's day nursery as boarding or rooming house); Brotherhood of Railroad Signalmen v. Zoning Board, 348 Ill. App. 106, 108 N. E. 2d 43 (union headquarters as fraternity); Robertson v. Western Baptist Hospital (Ky. App.), 267 S. W. 2d 395 (hospital nurses home as family or single housekeeping unit); Crain v. City of Louisville, *supra* (nursing home as boarding and lodging house or hospital and clinic). The language of the last-cited case, in discussing whether a nursing home was a boardinghouse or a hospital, is appropriate here. "While perhaps it could not be characterized as either exclusively, it is certainly something in between the two establishments and, as the ordinance permits use for either purpose, it must be construed as permitting use of an institution that is between the two in character, for the extremes include the mean."

Within the ambit of the zoning regulations as a whole, it is immaterial in this case whether the proposed use be termed a hospital or sanitarium, a philanthropic institution, a fraternity house, or a boarding and roominghouse. In that connection, the trial court found that alcoholism is a disease and that finding is specifically affirmed. However, the specific issue is whether the premises are used as a boardinghouse within the meaning of the zoning regulations defininig a boardinghouse. The sole definition of a boardinghouse in the regulation is: "A building, other than a hotel, where lodging and meals are provided for four or more persons, not members of a family, for compensation." No other limitations are expressed in the definition and no other limitations may now be considered in determining whether the proposed use of these premises constituted the operation of a boarding or lodginghouse within the meaning of the zoning ordinances. The evidence brings

the use of the premises well within such definitions and the character of use meets all the requirements of a boardinghouse within the meaning of the zoning regulations.

In interpreting definitions in zoning statutes or ordinances, the court cannot supply what the municipal legislative body might have provided but which the court cannot by reasonable construction say that it did provide. See 8 McQuillin (3d Rev. Ed.), Municipal Corporations, § 25.128a, p. 355. Restrictions in zoning ordinances and regulations should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language.

The facts here establish that the proposed use of the premises as a rehabilitation center for alcoholics, furnishing residential board and room facilities, is not violative of the zoning ordinances and regulations of the City of Grand Island. The action of the trial court was correct and the judgment is affirmed.

AFFIRMED.