THE COUNTY OF LAKE *et al.*, Plaintiffs-Appellants, *v.* GATEWAY HOUSES FOUNDATION, INC., Defendant-Appellee.

(No. 72-159;

Second District—May 8, 1974.

Jack Hoogasian, State's Attorney, of Waukegan (Michael M. Sieman, Assistant State's Attorney, and Henry D. Fisher, of counsel), for appellants.

Richard V. Houpt, of Pederson & Houpt, of Chicago, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The County of Lake and certain intervening property owners sought to enjoin the Gateway Houses Foundation, Inc., an Illinois not-for-profit corporation (Gateway), from allegedly operating a treatment center for drug addiction in violation of the Lake County zoning ordinance. The trial court found that the defendant's use was not a treatment center for drug addiction but was a use permitted under the ordinance, and denied the injunction.

On appeal, the County contends that the defendant's Lake Villa Gateway House facility is a center for the treatment of drug addiction within the meaning of the Lake County zoning ordinance and therefore is not permitted in the UR-3 zone in which it exists. The County further argues that even if Gateway's facility is not found to be a treatment center for drug addiction, the use shown in the record was not a principal permitted use under the ordinance and therefore still should have been enjoined for defendant's failure to obtain an administrative determination of compatibility with principally permitted UR-3 uses.

The County filed its original complaint on September 1, 1970, alleging that Gateway was occupying the subject property as a treatment center for drug addicts; that the prior use was as a religious retreat; and that a certificate was required and had not been obtained for the change in use.[1] The defendant answered that its use was residential and therefore the same as the prior use; that it had provided the County with that information but that the County had failed to act on its request; and that one of its officers had orally ordered defendant to vacate after previously advising defendant that its use was permitted.

The County filed an amended complaint on October 13, 1970, alleging that defendant was operating a treatment center for drug addiction which is not permitted under the applicable UR-3 zoning. Defendant

---

[1] The County indicated in oral argument it has abandoned lack of certification as a ground for relief in this appeal.

amended its answer to deny the new allegations and alleged that its use was compatible with group dwellings, sheltered care homes and nursing homes, all of which are permitted in the UR-3 district.[2] Upon the intervention of surrounding landowners the complaint was further amended to allege that defendant's use of its property depreciated the value of the intervenors' property.

The Lake County zoning ordinance divides the county into 19 zones. The subject property is zoned UR-3 [3] with the stated purpose:

> "[to] provide the full range of residential housing types in a high-density urban environment where all of the facilities for urban living, including community sewer and water facilities, are available or can be made available in the future."

The principal permitted uses in a UR-3 zone include apartment houses (20 dwelling units or less), child-care institutions, churches, community centers for public use, homes for the aged, general hospitals, nursing or convalescent homes, schools or homes for the mentally disturbed or retarded or physically handicapped, group dwellings,[4] and sheltered-care homes.[5]

Following the table of principal permitted uses the ordinance further provides:

> "The above uses in Table 1 are permitted in the zones designated. However, the Zoning Officer shall have the right to allow any other use which is similar to and compatible with those uses permitted in the zone in question, and which is consistent with the purposes of this Ordinance. Such determination by the Zoning Officer shall be in writing and a denial shall be appealable to the Zoning Board of Appeals. A record shall be kept of each additional use allowed and shall be available for public inspection."

In July of 1968, the Lake County zoning ordinance was amended to create a new category in the table of principal permitted uses:

---

[2] Defendant also filed an affirmative defense alleging that, if the ordinance does not permit its use, it is unconstitutional. The court deferred consideration of the constitutional issue and decided the case without reaching it.

[3] One of six Urban Residential zones.

[4] A "Group dwelling" is defined in the ordinance as: "A building, exclusive of mobile homes, hotels, or motels as herein defined, providing, as a minimum, living, sleeping, and toilet facilities for more than three (3) persons not comprising a family."

[5] The ordinance in defining a "Sheltered care home" states: "SHELTERED CARE: Maintenance and personal care, exclusive of nursing, for persons incapable of maintaining a private independent residence. SHELTERED CARE HOME: A private boarding home, institution, building, residence, or other place, which, through its ownership or management, provides sheltered care to three (3) or more adults who are not related to the applicant or owner by blood or marriage."

"Hospital, or treatment center for alcoholism, drug addiction, or similar afflictions."

This use is shown as expressly permitted only in commercial business (CB) and highway commercial (HC) zones.

The facts adduced in the hearing below are essentially undisputed. The subject property, located on approximately 42 acres of usable land on a peninsula between Fox Lake and Petite Lake, is surrounded by water on three sides. The main residence was once a large three-story mansion which had been remodeled by the former owners into a retreat house for communal living. There are several accessory buildings including a two-story residence used by the director of the facility and a coachhouse suitable for a projected vocational training use. Only two private residences adjoin the property, one 116 feet, the other 284 feet from the main house.

To sustain its contention that defendant is using the premises as a treatment center for drug addiction, the County refers to various circumstances including the defendant's charter, its literature, its dealings with the State Department of Mental Health, its application for funds to the Illinois Law Enforcement Commission, and its receipt of funds from the State drug abuse program. The County points to the fact that practically all of the residents and staff at Gateway were at one time users of some form of drug or narcotics, and that Gateway uses a structured environment, controlled activities and confrontation sessions to rehabilitate the residents away from drug dependency.

Defendant's purposes as stated in its charter as amended in June of 1969 include:

"A. The purpose of GATEWAY HOUSES FOUNDATION shall be to understand the problems of drug dependency and those dependant upon drugs, and with this understanding to provide refuge and rehabilitation for persons afflicted, guidance to others away from the path of drug dependency, and a better understanding of drug dependency by society generally.

B. GATEWAY HOUSES FOUNDATION is a private foundation specifically designed to provide therapeutic community services to drug abuse addicts in a residential setting, to provide specialized training programs for persons working with drug abuse addicts and to provide a broad base of cooperation with governmental agencies, academic communities, and any other organizations working in the areas of research, education and rehabilitation of drug abusers." [6]

---

[6] Prior to the amendment the purposes in Paragraph B included the maintenance of "a community conducive to the treatment and rehabilitation of those still dependent upon drugs".

Plaintiffs introduced various brochures describing defendant's facilities which included references to "medical treatment". The testimony indicated, however, that the medical treatment referred to in the brochures did not pertain to defendant's Lake Villa facility but to two facilities which defendant maintained and operated in Chicago.

Plaintiffs also introduced a copy of defendant's grant application to the Illinois Law Enforcement Commission seeking funds for "additional treatment facilities for drug dependent people." The word "treatment" is also used in other parts of the application. Defendant was, in fact, awarded a substantial sum "for an additional treatment facility for drug dependant people". An agreement between Gateway and the Department of Mental Health under the State's drug abuse program refers to "patients" of Gateway.

Defendant relies on evidence in the record on how Gateway actually operates. An applicant would not be accepted at Gateway in Lake Villa if at the initial interview he was shown to be "high" or in possession of drugs. No medication is given to persons at Gateway; detoxification takes place somewhere else before the applicant is accepted. An applicant who seeks entry after detoxification must have a doctor's statement that he is physically withdrawn from the drug. Although some people who come into Gateway without going through detoxification may have some withdrawal symptoms, they must attend as everyone else does to their regular duties. There are no medical or treatment facilities at the Lake Villa Gateway House; no methadon treatment is administered nor is any medical or psychiatric treatment rendered; and none of its staff are psychiatric or medical professionals. The medical examination for Gateway applicants occurs at the Gateway facilities in Chicago, and those that need professional help are referred to outside help. Once accepted into Gateway, residents will find there are no sessions about giving up drugs. The emphasis is on a change in values and attitudes towards life. However, since part of their life style involved a dependency on drugs, part of the purposes of admitting residents to Gateway is to terminate their use of drugs.

Dr. Arthur Woloshin, a psychiatrist, testified for plaintiff as an expert witness. Based upon his experience he concluded that the program of the Lake Villa facility constitutes a form of treatment for drug addiction recognized by the medical profession. His opinion was based on the fact that the methods used at Gateway are recognized psychiatric forms of treatment employed in a wide range of disorders and disabilities. The doctor explained that group therapy and activity therapy concepts have been going on in hospitals for many years; and that the treatments are not specifically related to the problem of drug abuse. The witness also

based his opinion on the connection between the program and the Illinois drug abuse program, and the fact that the Gateway program was sponsored by the Department of Mental Health and the Illinois Law Enforcement Association Commission to provide services for a psychiatrically and socially disabled, distinct group of people.

On cross-examination the witness conceded that some in the profession might disagree over whether the occupants of Gateway were being given medical treatment since traditionally group therapy has been administered in hospitals by professionally trained people in the medical-psychiatric field. The witness also acknowledged that drug clinics are mainly professionally staffed.

· In its order dismissing the complaint, the trial court made the following pertinent findings:

"4. That the said residental facility is occupied by approximately 40 to 50 voluntary residents, practically all of whom were at one time users of some form of drugs or narcotics and who, while furnished their room, board and clothing by Gateway, perform all customary functions in maintaining the residential facility including cleaning, washing, minor repairs, food preparation and serving, exterior yard repair and maintenance.

5. That the Gateway program is largely directed toward creating and maintaining a controlled and structured residential environment on the premises, which is designed or planned to aid and encourage former drug and narcotics users in restructuring their lives and in establishing values and principles to guide their behavior and thereby make them emotionally mature, productive and responsible members of society. In so doing, Gateway utilizes, among other things, a technique known as 'confrontation sessions' wherein the residents are encouraged to participate in group discussions where they may express their feelings and reactions to other residents, their conduct and other events, occurrences and ideas and which is designed to aid the participants in re-examining their values and establishing new principles to guide their behavior.

6. That Gateway maintains no medical facilities on the premises and its program for residents is not a medically-oriented, orthodox ·approach to the problems of drug addiction although some aspects thereof may constitute a medically recognized form of treatment.

7. That the subject property is zoned and classified in the UR-3 District under the Lake County Zoning Ordinance which includes, among others, as permitted uses, apartment houses, child care in-

stitutions, group dwellings, homes for the aged, general hospitals, nursing or convalescent homes, schools or homes for mentally disturbed or retarded and sheltered care homes, the latter of which uses is defined as private boarding home, institution, building, residence or other place, which, through its ownership or management, provides sheltered care to three or more adults who are not related to the applicant or owner by blood or marriage.

8. That Gateway's use of the subject property is not that of a hospital or treatment center for drug addiction within the ordinary as well as the medical meaning of that term and as that term is used in the Lake County Zoning Ordinance, but, rather, its use is similar to and compatible with other uses permitted in the zoning district in which the subject property is classified and is not in violation of the terms of the Lake County Zoning Ordinance."

We have also had the benefit of a thorough memorandum opinion by the trial court which has been made a part of the record. In the course of this opinion the trial judge noted that the expressed intent of the Lake County zoning ordinance is to achieve a compatibility· of uses within each zone. The court rejected plaintiffs' contention that, because a hospital or treatment center for alcoholism, drug addiction and similar afflictions is permitted in a "CB" and "HC" zone under the ordinance, the operation of defendant was necessarily prohibited in the UR-3 zone. He concluded that the defendant's use as shown by the evidence would almost literally fall within the definition of a "sheltered care home" as defined in the Lake County zoning ordinance; and that it therefore was not incompatible with any of the other uses permitted in UR-3 zones. The court also reasoned that the use of the term "treatment center" in the 1968 amendment of the Lake County zoning ordinance should be given its common meaning since no definition was stated in the ordinance; and that the definition of "treatment" and "drug addiction" set forth in the Drug Addiction Act as amended in 1967 (Ill. Rev. Stat. 1967, ch. 91½, pars. 120.3—4, 120.3—7)[7] did not control the meaning of the terms as used in the Lake County zoning ordinance.

We are in agreement with the reasoning expressed and the result reached below.

■■ The construction of terms used in a zoning ordinance is for the purpose of ascertaining the intention of the legislative body; and if its

[7] " 'Addiction' or 'drug addiction' means such compulsion to continue taking a narcotic drug, such psychic or physical dependence on the effect of narcotic or dangerous drugs or such abuse of the use of narcotic or dangerous drugs as is harmful to the individual or society." (Par. 120.3—4.) " 'Treat' means the rehabilitation of addicts in a manner approved by the Department." (Par. 120.3—7.)

intention is expressed in clear and unmistakable terms there is no need for construction and the court must declare and enforce a law as enacted. (*Village of Bannockburn v. County of Lake* (1959), 17 Ill.2d 155, 158-159; *Belfield v. Coop* (1956), 8 Ill.2d 293, 306-307.) The entire statute must be considered when the legislative intent is to be ascertained. (*Coan v. Cessna Aircraft* (1973), 53 Ill.2d 526, 528.) Zoning ordinances are in derogation of the common law so that any ambiguity or uncertainty must be decided in favor of the property owner. *Herrington v. County of Peoria* (1973), 11 Ill.App.3d 7, 10.

■■ It is, of course, possible as plaintiffs argue that the drafters of the zoning amendment had in mind the definitions of the Drug Addiction Act when the County adopted the amendment to the zoning ordinance in 1968. The meaning of words used in a given statute may be ascertained from the consideration of other acts *in pari materia* where the words are used. (*Purtell v. Philadelphia & Reading Coal & Iron Co.* (1912), 256 Ill. 110, 118; *South Park Commissioners v. First National Bank* (1898), 177 Ill. 234, 241.) Where, however, words are capable of having various meanings depending on the circumstances in which they are used, the definition in one legislative act has little or no value in determining its meaning in another. See *People ex rel. Powell v. Board of Education* (1951), 343 Ill.App. 382, 385.

Here, as the defendant points out, the Drug Addiction Act and the Lake County zoning ordinance are unrelated; they were passed on different dates and by different legislative bodies. If the meanings in the State law were intended to apply the County should have made reference to the Drug Addiction Act or included a similar definition in the amendment to the ordinance. Without the ordinance indicating otherwise, a property owner should be able to rely on the terms used in the zoning ordinance meaning what they are commonly understood to mean.

■■ In construing the ordinance, the court could properly conclude as it did that the spirit, intent and reason of the ordinance was to establish a compatibility of uses within zones. When the ordinance is examined from this viewpoint, the application of rules of construction support the conclusion of the court. The natural import of the language "hospital, or treatment center for drug addiction", if not more specifically defined, connotes a use in which medical staff and medical and psychiatric facilities are used to treat persons dependant on drugs. The court therefore could properly conclude that the actual use made of the premises is determinative; and that the underlying purpose of the Gateway program as broadly expressed in its literature, its charter or by implication from its grants of support is not controlling; and that Gate-

way's present use does not come within the terminology which by reasonable intendment and common understanding would apply to a hospital or treatment center for alcoholism, drug addiction and similar afflictions. That the present use is compatible and so closely resembles other uses permitted in UR-3 zones, particularly group dwellings, nursing or convalescent homes, and sheltered-care homes, was a proper consideration and supported the court's conclusion that the ordinance was not intended to exclude a use by a group because they were former drug users or alcoholics when any other group could use the property as defendant uses it. See *Beckman v. City of Grand Island* (1968), 182 Neb. 840, 157 N.W.2d 769; *United Cerebral Palsy Association v. Zoning Board of Adjustment* (1955), 382 Pa. 67, 114 A.2d 331; *Unteed v. Lehman* (1957), 77 Ohio L. Abs. 353, 150 N.E.2d 509.

The County also contends that the trial court did not actually find that the defendant's use was that of a "sheltered care home" as defined in the zoning ordinance, but merely found that the use shown by the evidence was compatible with that use and other principal uses set forth in the UR-3 zone. Thus, the County argues defendant's failure to comply with the administrative procedures required to secure a compatibility determination by the zoning officer or by appeal to the Zoning Board of Appeals requires that the case be reversed. We conclude that from a fair reading of the judge's memorandum opinion he did find that Gateway qualified as a "sheltered care home", and not merely that it was a different but compatible use with that principal use.

Moreover, even if we were to accept defendant's argument that administrative procedures were not followed, it appears from the record that the County waived this issue in the court below and may not now rely on it. Although the County initially alleged that Gateway had failed to obtain a change of use certificate as required by the zoning ordinance and the Lake County Building Code, it abandoned this ground for injunctive relief, and instead relied on its amended complaint alleging that Gateway was a treatment center for drug addiction not permitted in a UR-3 zone. The County did not allege or argue in the trial below that if Gateway were not found to be a treatment center it should still be enjoined for failure to obtain an administrative compatibility determination. We conclude that both Gateway's failure to obtain a certification of changed use and its failure to obtain an administrative determination of compatibility have been waived since the procedural sections of the ordinance were not urged as a basis for injunctive relief in the trial court. For the reasons stated we affirm the judgment below.

Affirmed.

GUILD and RECHENMACHER, JJ., concur.