ERNEST A. MOSSMAN AND ELAINE MOSSMAN, HUSBAND AND WIFE,
APPELLANTS, V. CITY OF COLUMBUS, NEBRASKA, APPELLEE.

449 N.W.2d 214

Filed December 22, 1989.    No. 88-099.

George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, for appellants.

Stan A. Emerson, of Luckey, Sipple, Hansen, Emerson & Schumacher, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Plaintiffs-appellants Ernest A. and Elaine Mossman, husband and wife, challenge the district court's affirmance of defendant-appellee City of Columbus' refusal to permit the replacement of a mobile home. The issue raised by the Mossmans' six assignments of error is whether by removing the original mobile home from their property they lost their right to continue the nonconforming use of their property as a mobile home site. We affirm.

The Mossmans purchased the property and original mobile home on May 21, 1977. This mobile home unit had existed on the property since the Mossmans' predecessor in title placed it there in 1961. The property was then, in November 1979, annexed by the City of Columbus, a city of the first class. Since its annexation, the property has been zoned within a two-family-residence district.

In May 1986, the Mossmans removed the original mobile home, the outside of which had become "shabby," from their property with the intention of replacing it with a newer, much "nicer looking" unit and leasing it to tenants, as they had the original unit. After removing the original mobile home, the Mossmans poured a concrete foundation for the replacement unit at the place where the original unit had sat. The city's building inspector then, on June 27, 1986, left a notice on the Mossmans' property, stating: "WARNING! This Installation DOES NOT meet the requirements of the Columbus Building Code. Further use or construction is PROHIBITED." Thereafter, the Mossmans received a letter from the building inspector, which stated:

> In regard to the mobile home you parked west of your home at 4710 11th Street, I have noticed that it has been

removed and a new pad was poured. By removing the existing mobile home, you broke the nonconforming use and any further use on this property shall be in conformity with the City Code.

This is to notify you that if you move another mobile home on to this property, you will be in violation of the City Code.

I am enclosing a copy of Sec. 7 of the Mobile Home Code.

In the meantime, the Mossmans had, at a different location, repaneled the inside of the replacement unit, replaced most of the plumbing, and rewired the bathroom. The replacement unit was approximately 15 feet longer and 4 feet wider than the original mobile home, and although the Mossmans planned to continue using the septic tank and well they had installed to service the original unit, the replacement unit was capable of being attached to the city water supply and waste disposal utilities. It was the Mossmans' further intention to anchor the replacement mobile home to the new concrete foundation and to skirt the unit with concrete blocks so as to give it the appearance of having a foundation.

The Mossmans appealed from the building inspector's action to the city's board of zoning adjustment, which affirmed the inspector's action. The Mossmans then appealed to the district court. Their position is that because a mobile home had been situated on their property before the property became subject to the city's zoning ordinances, they can continue such nonconforming use pursuant to Columbus Zoning Ordinance, ch. 13, § 11-13-7 (1981). The city, on the other hand, argues that if the Mossmans are permitted to replace the original mobile home, the nonconforming use will be permitted to run indefinitely, in violation of the city's ordinances.

We begin our analysis by recalling that a zoning board of adjustment is vested with discretion to dispose of matters within its province, but its acts are judicial in nature and are subject to review and reversal when they constitute an abuse of discretion and are arbitrary. *McClelland v. Zoning Bd. of Appeals*, 232 Neb. 711, 441 N.W.2d 893 (1989).

From the evidence it is clear that as the Mossmans claim, the

original unit existed on the Mossmans' property before the property was annexed by the city and thereby became subject to the zoning ordinances. It is also clear that the zoning ordinances prohibit the placement of a mobile home on their property which is now zoned for use by two-family residences and that the Mossmans' use of the original mobile home was a nonconforming use, which is defined by Columbus Zoning Ordinance, ch. 1, § 11-1-1 (1981), as "a building or land occupied by use that does not conform with the regulations of the district in which it is situated." See *County of Saunders v. Moore*, 182 Neb. 377, 155 N.W.2d 317 (1967) (a "nonconforming use" is an existing use which is contrary to the zoning regulations).

The Mossmans' continued use of the property for a mobile home is governed by the general nonconforming use provision found in § 11-13-7, which reads in relevant part:

> The lawful use of a building or lot existing at the time of the passage of this Title may be continued, although such use does not conform with the provisions hereof, and such use may be extended throughout the building; provided no structural alterations, except those required by law or provisions of this Code are made therein.

That portion of § 11-13-7 is in conformity with Neb. Rev. Stat. § 19-904.01 (Reissue 1987), which empowers cities of the first class, see chapter 19, article 9, to provide by zoning regulation "for the restoration, reconstruction, extension, or substitution of nonconforming uses upon such terms and conditions as may be set forth in the zoning regulations."

"Structural alterations" is defined in § 11-1-1 as "any change in the supporting members of a building, such as bearing walls, columns, beams or girders." Section 11-1-1 defines "building" as

> a structure having a roof supported by columns or walls and when separated by a division wall without openings, each portion of such building shall be deemed a separate building, except as may be provided in a possible section of this Title on exceptions. The word "Building" includes the word "Structure."

"Structure" is defined in § 11-1-1 as "anything constructed or

erected, the use of which requires more or less permanent location on the ground or attached to something having a permanent location on the ground."

The interpretation of terms within a zoning ordinance is a question of law for the court. Zoning laws should be given a fair and reasonable construction in the light of the manifest intention of the legislative body, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the law as a whole. *City of Lincoln v. Bruce*, 221 Neb. 61, 375 N.W.2d 118 (1985); *City of Beatrice v. Goodenkauf*, 219 Neb. 756, 366 N.W.2d 411 (1985). Where the provisions of a zoning ordinance, as to the uses of property which are permitted or which are prohibited in certain districts, are expressed in common words of everyday use without enlargement, restriction, or definition, they are to be interpreted and enforced according to their generally accepted meaning. *Id.* In interpreting the language of an ordinance to determine the extent of the restriction upon use of the property, the language must be interpreted, where doubt exists as to the intention of the legislative body, in favor of the property owner and against any implied extension of the restriction. *Beckman v. City of Grand Island*, 182 Neb. 840, 157 N.W.2d 769 (1968).

Thus, we must first determine whether a mobile home is a building or structure within the meaning of the words as used in § 11-13-7. In arguing that it is not, the Mossmans cite to a number of cases arising in a variety of contexts which hold that for the purposes involved in those cases, a mobile home was not a building or structure. At least one case, *Bixler v. Pierson*, 188 So. 2d 681 (Fla. App. 1966), holds that a mobile home placed on land for use as a dwelling was a structure as the term "structure" was used in a nonconforming use ordinance.

More important than what other cases have held is the language of the ordinance before us. According to § 11-1-1, a structure includes any constructed thing which requires for its use attachment to something having a permanent location on the ground. The original unit was connected to a septic tank and well, things which have a permanent location on the ground. Thus, the original unit was indeed a structure.

The remaining, and dispositive, question is whether the replacement of the original unit with another mobile home would constitute a "structural alteration" within the contemplation of § 11-13-7. In arguing that it would not, the Mossmans rely upon *Kensmoe v. City of Missoula*, 156 Mont. 401, 480 P.2d 835 (1971). Therein, a landowner replaced a dilapidated and untenantable mobile home which had existed on her property as a nonconforming use with a newer mobile home. The applicable ordinance, like that before us, permitted nonconforming uses to continue provided no structural alterations except those required by ordinance were made. However, the decision of the *Missoula* court that the replacement did not constitute a structural alteration hinged upon a provision not present in the ordinance before us. The *Missoula* ordinance did not " 'apply to existing structures, nor to the existing use of any building, but shall apply to any alterations of a building to provide for its use for a purpose . . . different from the use to which it was put before alteration . . . .' " *Id*. at 404, 480 P.2d at 837. The *Missoula* court thus held that the ordinance prohibited only structural alterations made to change the use and not those made for the purpose of continuing the same use. Therefore, the *Missoula* ordinance did not prevent the landowner from replacing her mobile home for the purpose of continuing the use of the mobile home as a residence.

In the ordinance before us, whether a structural alteration occurs turns not on the use to which the structure is put, but on changes made to the structure itself. Consequently, *Missoula* is inapposite.

Applicable is *Bixler v. Pierson, supra,* which held that the removal of an old trailer and replacement with a newer trailer constituted an alteration, extension, and enlargement of a nonconforming structure. The court reasoned that if one replacement is proper, subsequent replacements would also be proper, and the life of the nonconforming structure would be indefinitely prolonged, defeating the whole purpose of the zoning ordinance. Also, *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 288 N.W.2d 129 (1980), held that a landowner, by removing an existing mobile home protected as a

nonconforming use from his property which was zoned in a " 'recreation district' " and substituting a new mobile home, violated a county zoning ordinance which prohibited buildings in recreational districts from being " 'erected, moved or structurally altered' " in excess of 50 percent of the building's assessed value and thereby lost protection of the nonconforming use doctrine. *Id*. at 168, 288 N.W.2d at 137. But see *Johnston v. Orange County*, 342 So. 2d 1031 (Fla. App. 1977) (replacement of single mobile homes with "double wide" mobile homes within mobile home park did not constitute "extension or enlargement" of nonconforming use in violation of nonconforming use ordinance).

The language of § 11-1-1 provides that any change in the supporting members of a structure constitutes a structural alteration. There can be no greater change in the supporting members of a structure than that which occurs when the entire structure is removed and replaced with another, no matter how similar the two structures may be. Therefore, the inescapable conclusion is that replacement of the original mobile home with a new unit would constitute a structural change within the contemplation of § 11-1-1.

However, the Mossmans, in reliance upon *City of Omaha v. Glissmann*, 151 Neb. 895, 39 N.W.2d 828 (1949), *appeal dismissed* 339 U.S. 960, 70 S. Ct. 1002, 94 L. Ed. 1370 (1950), argue that even if that is so, a zoning ordinance may not operate retroactively so as to deprive a property owner of previously vested rights by preventing a use to which the property was put before enactment of the ordinance. Although that is a correct statement of the law as far as it goes, *City of Lincoln v. Bruce*, 221 Neb. 61, 375 N.W.2d 118 (1985), recognized that ordinances which limit and plan for the elimination of nonconforming uses are generally considered a proper exercise of a municipality's power. The *Bruce* court thus approved an ordinance providing that the discontinuance of a nonconforming use for a period of 2 years forfeited the right to reestablish such a nonconforming use thereafter. See, also, *Wolf v. City of Omaha*, 177 Neb. 545, 129 N.W.2d 501 (1964), which approved an ordinance requiring the termination of a nonconforming use after a period of 7 years 15 days from the

ordinance's enactment.

The relevant ordinances planned for the gradual elimination of the Mossmans' nonconforming use by permitting them to keep the original mobile home on their property until they decided to replace it. Therefore, the Mossmans lost their investment not as a direct result of the city's zoning ordinance but, rather, because the original mobile home had become shabby. See *Service Oil v. Rhodus*, 179 Colo. 335, 500 P.2d 807 (1972), *overruled on other grounds*, *Hartley v. City of Colorado Springs*, 764 P.2d 1216 (Colo. 1988). There has been no impermissible retroactive application of the city's zoning ordinances.

Lastly, citing us to *State v. Board of County Commissioners of Cass County*, 60 Neb. 566, 83 N.W. 733 (1900), the Mossmans complain that the city now rests its action upon ordinances other than those upon which it initially based its action and upon which this action was tried, all in violation of the precept that where one gives a reason for his or her decision and conduct touching a matter involved in controversy, he or she is estopped from changing his or her ground and putting the conduct upon another and different consideration. Although the rule survives to the present day, *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640 (1987), it has no application to the case before us, for the record does not support the Mossmans' claims. As the earlier recitation of the relevant facts establishes, the building inspector's initial notice refers to the building code, and his later letter states that by removing the original mobile home, the Mossmans "broke" their nonconforming use and that further uses would thus need to be in "conformity with the City Code." Moreover, the Mossmans' operative petition refers to the nonconforming use provisions of § 11-13-7 and alleges that they had not abandoned their earlier nonconforming use. That allegation was denied by the city's answer. The application of § 11-13-7 was thus an issue in the trial court.

The judgment of the district court is correct and is therefore affirmed.

AFFIRMED.

BOSLAUGH, J., dissenting in part.

While I agree generally with the majority opinion and the judgment in this case, I believe it is important to understand that zoning ordinances may operate retroactively to deprive a property owner of previously vested rights by preventing a use to which the property was put before enactment of the ordinance.

In *Wolf v. City of Omaha*, 177 Neb. 545, 129 N.W.2d 501 (1964), we held such an ordinance of the City of Omaha to be valid. The ordinance allowed a dog kennel which was in nonconforming use on February 1, 1955, to remain in such use only until February 16, 1962. In that case, we quoted from *City of Los Angeles v. Gage*, 127 Cal. App. 2d 442, 274 P.2d 34 (1954), in which the court said, " 'Every zoning ordinance effects some impairment of vested rights either by restricting prospective uses or by prohibiting the continuation of existing uses, because it affects property already owned by individuals at the time of its enactment.' " 177 Neb. at 566, 129 N.W.2d at 513.

Whether the mandatory discontinuance of a particular nonconforming use after a fixed period is a reasonable exercise of the police power must be determined from the facts and circumstances in each case. The important point is that the right to maintain a nonconforming use of property indefinitely is not absolute, and it may be limited or destroyed by subsequent zoning legislation.