Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/12/2020 08:08 AM CDT

- 321 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

Frank Hochstein and Bow Creek Valley, LLC,
appellants, v. Cedar County Board of
Adjustment and Mark and Carla
Goeden, appellees.

___ N.W.2d ___

Filed March 20, 2020.    No. S-19-459.

1. **Zoning: Courts: Appeal and Error.** In appeals involving a decision of a board of adjustment, an appellate court reviews the decision of the district court, and irrespective of whether the district court took additional evidence, the appellate court is to decide if, in reviewing a decision of a board of adjustment, the district court abused its discretion or made an error of law.

2. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

3. **Zoning: Ordinances.** The interpretation of a zoning ordinance presents a question of law.

4. **Zoning: Statutes: Ordinances: Appeal and Error.** When interpreting zoning regulations, an appellate court applies the same rules utilized in statutory interpretation.

5. **Zoning: Statutes: Ordinances.** Just as statutes relating to the same subject are in pari materia and should be construed together, a county's zoning regulations should be read and construed together.

6. **Zoning: Ordinances.** Zoning laws should be given a fair and reasonable construction in light of the manifest intention of the legislative body, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the law as a whole.

7. **____: ____.** Where the provisions of a zoning ordinance are expressed in common words of everyday use, without enlargement, restriction, or definition, they are to be interpreted and enforced according to their generally accepted meaning.

- 322 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

8. **Zoning: Ordinances: Intent.** Restrictions in zoning ordinances and regulations should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language.

9. **Zoning: Statutes: Ordinances.** In interpreting definitions in zoning statutes or ordinances, the court cannot supply what the municipal legislative body might have provided but which the court cannot by reasonable construction say that it did provide.

10. **Zoning: Ordinances: Intent.** In interpreting the language of an ordinance to determine the extent of the restriction upon use of the property, the language must be interpreted, where doubt exists as to the intention of the legislative body, in favor of the property owner and against any implied extension of the restriction.

Appeal from the District Court for Cedar County: Paul J. Vaughan, Judge. Affirmed.

Stephen D. Mossman, of Mattson Ricketts Law Firm, for appellants.

Mark D. Fitzgerald, of Fitzgerald, Vetter, Temple, Bartell & Henderson, for appellee Cedar County Board of Adjustment.

Jeffrey L. Hrouda for appellees Mark and Carla Goeden.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

A county board of adjustment affirmed the grant of a zoning permit for construction of a new residence within an agricultural intensive district. The district court affirmed. The ultimate issue is whether the proposed residence was a "non-Farm residence" under the zoning regulations. Construing the regulations as a whole and giving them a reasonable construction, we find no abuse of discretion or legal error. Therefore, we affirm the judgment.

- 323 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

## BACKGROUND

### Parties and Proceedings

Frank Hochstein and Bow Creek Valley, LLC (collectively Hochstein), operated a 4,500 animal unit feedlot within the "'A-1' Agricultural - Intensive District" (A-1 District) of Cedar County, Nebraska. Under the Cedar County zoning regulations, Hochstein's cattle feedlot fell within the definition of a livestock feeding operation (LFO). For an LFO the size of Hochstein's, the regulations specify a setback distance of 1 mile for a residence.

Mark and Carla Goeden are neighboring landowners of Hochstein. They are involved in an agricultural operation in Cedar County consisting of the ownership and use of approximately 900 acres of farmland. Of the 900 acres, 240 acres are located in one platted section, including both a quarter section of 160 acres at the north end and an adjoining 80-acre tract on the south end.

The Goedens submitted an application for a zoning permit, seeking a permit to construct a new house on the 80-acre tract at the south end of their 240-acre farm. The Cedar County zoning administrator approved the permit.

Two days later, Hochstein filed a notice of appeal of the zoning administrator's decision with the Cedar County Board of Adjustment (the board). Hochstein alleged that the Goedens' zoning permit was for a "non-farm residence" and that the zoning regulations provided that "[n]ew non-Farm residences" shall not be located "closer to existing LFO's than the setback distances for LFO's from existing residences on the matrix set out above." Hochstein asserted that the Goedens' proposed residence was located 3,300 feet from Hochstein's LFO, but that the required setback was 1 mile, or 5,280 feet. By a 4-to-1 vote, the board affirmed the zoning administrator's decision.

- 324 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
305 NEBRASKA REPORTS
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

Ten days later, Hochstein filed a complaint in district court. Hochstein alleged that the board's decision was illegal and not supported by the evidence and therefore was arbitrary, unreasonable, or clearly wrong. The district court held a hearing and received the verbatim transcript of the board hearing, exhibits offered to the board, and the board's written resolution. One of the exhibits was the Cedar County zoning regulations.

## ZONING REGULATIONS

The structure of the zoning regulations impedes a clear recitation. The regulations are divided into topics, each identified by a topic phrase. Within a topic, sections are numbered. But the same section numbers are used under other topics within the regulations. We organize this summary to omit confusing references.

We will first recall the regulations' definitions, identifying undefined terms and quoting definitions of other terms. Then we will quote regulations governing an A-1 District. These will include sections covering intent and purpose, principal permitted uses, conditional uses, and setback requirements. Finally, we will quote the regulation for an A-1 District imposing a setback requirement for "[n]ew non-Farm residences"—the regulation at the heart of the dispute.

As we begin with definitions, we first note key terms which are *not* defined. The zoning regulations provide no definitions of "non-farm residence," "farm residence," and "residence." With respect to such undefined terms, the regulations dictate that "[w]ords or terms not herein defined shall have their ordinary meaning in relation to the context."

Turning now to defined terms, we progress from general to specific. First, "agriculture" is defined as

the use of a tract of land for the growing of crops, pasturage, nursery, or the raising of poultry, including the structures necessary for carrying out farming operations, the residence or residences of those owning or operating

- 325 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

the premises, a member of the family thereof, or persons employed thereon, and the family thereof, but such use shall not include feedlots.

Second, a "farm" means

an are[a] containing at least forty (40) acres or more which is used for growing of the usual farm products such as vegetables, fruit, and grain, and storage on the area, as well as for the raising thereon of the usual farm poultry and farm animals up to 300 animal units as defined in these regulations[.]

Third, "agricultural operations" are defined as "[f]armsteads of forty acres or more that produce one thousand dollars ($1,000.00) or more of farm products each year." Finally, "agricultural and farm buildings and structures" are defined to mean

any building or structure *that is necessary or incidental to the normal conduct o*[*f*] *a farm* including but not limited to residence of the operator, residence of hired men, barns, buildings and sheds for housing livestock, poultry and farm machinery, buildings for the storage or shelter of grain, hay and other crops, silos, windmills and water storage tanks.

(Emphasis supplied.)

Turning to zoning regulations addressing an A-1 District, we first quote the language explaining its intent and purpose:

The [A-1 District] regulations are intended to provide for the use and conservation of agricultural land, to protect the value of such land, and to *protect it from indiscriminate residential and urban development and other incompatible and conflicting land uses*: to conserve and protect the value of open space, wooded areas, streams, mineral deposits and other natural resources and to protect them from incompatible land uses and to provide for their timely utilization; to provide for the location and govern the establishment and operation of land uses which are compatible with agriculture and are of such nature

- 326 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
305 NEBRASKA REPORTS
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

that their location away from residential, commercial and industrial areas is most desirable; to *provide for the location and govern the establishment of residential uses which are accessory to and necessary for the conduct of agriculture and to provide for the location and govern the establishment and use of limited non-agricultural residential uses.* Such non-agricultural residential uses shall not be so located as to be detrimental to our [sic] conflict with other uses which are named as permitted or conditional uses in this district and are appropriate to other property in the area. The nature of the A-1 District and the uses allowed out right [sic] or by conditional use precludes the provision of services, amenities and protection from other land uses which are afforded to residential uses by the regulations of other districts, and it is not intended that the A-1 District regulations afford such services, amenities and protection to residential; [sic] uses located therein.

(Emphasis supplied.)

The regulations for an A-1 District list "permitted principal uses." One such use is "[a]gricultural operations, and the usual agricultural and farm buildings and structures, including the residence of the owners and their families and any tenants and employees who are engaged in agricultural operations on the premises." Another is "[n]ew single family dwellings on lots of eighty (80) acres or more."

The A-1 District regulations also itemize conditional uses. Conditional uses are those which the governing body "may, by conditional use permit, authorize . . . subject to such conditions as the [g]overning [b]ody deems necessary." One such conditional use is "[n]ew single-family dwellings on lots no less than forty (40) acres, provided the Intensity of Use and all other requirements of this district are met."

The regulations contain a matrix with setback distances from existing residences and LFOs. Following the matrix, a regulation states in part, "The distance requirements may be

- 327 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
305 NEBRASKA REPORTS
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

decreased or waived by a waiver signed by all of the property owners of non-farm residence or other residence not on the owner's property or LFOs within the distances specified."

The last regulation contained in the A-1 District section is a focal point of these proceedings. It states: "New non-Farm residences, as defined in these Regulations, shall be located no closer to existing LFO's than the setback distances for LFO's from existing residences on the matrix set out above." But, as noted above, "non-Farm residences" is not defined in the regulations.

DISTRICT COURT'S DECISION

The district court affirmed the board's decision. The court recognized that permitted uses in an A-1 District included "'farm buildings and structures, including the residence of the owners'" and "'new single family dwellings on lots of eighty (80) acres or more.'" It noted that the Goedens were the owners of farmland, including a 240-acre tract, and that their land qualified as an "Agricultural Operation" under the zoning regulations.

The court reasoned that "using the plain meaning of the terms, a 'non-Farm' residence would be a residence which was not located on a farm." But, the court observed, the proposed residence would be constructed on a farm. The court emphasized that the zoning regulations specifically permitted as principal uses the residence of the owners and new single family dwellings on lots of 80 acres or more. It reasoned that "the only new residences subject to the setback requirements are non-Farm residences." The court concluded:

The Goeden building permit is consistent with the overall manifest intention of the Cedar County Supervisors to protect agriculture. The residences of farmers, operators or mere landlords, are permitted principal uses in the district while the interests of a conditional use LFO are subordinated to farmer residences but protected to some degree by non-farm residences.

- 328 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

Hochstein filed a timely appeal, which we moved to our docket.[1]

## ASSIGNMENTS OF ERROR

Hochstein alleges that the court erred in (1) interpreting the zoning regulations in determining whether the proposed residence qualified as a "non-farm residence," (2) finding the proposed residence was consistent with the intent of the zoning regulations, (3) affirming the decision of the board, and (4) finding the decision of the board was not arbitrary, unreasonable, or clearly wrong.

## STANDARD OF REVIEW

[1] In appeals involving a decision of a board of adjustment, an appellate court reviews the decision of the district court, and irrespective of whether the district court took additional evidence, the appellate court is to decide if, in reviewing a decision of a board of adjustment, the district court abused its discretion or made an error of law.[2]

[2] An appellate court independently reviews questions of law decided by a lower court.[3]

## ANALYSIS

[3] Although Hochstein makes four assignments of error, all ultimately rest upon a single contention—that the Goedens' new residence was not a "farm residence," or stated conversely, that it was a "non-farm residence." At oral argument, all of the parties characterized the question before us as one of law. We agree. The interpretation of a zoning ordinance presents a question of law.[4]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[2] *Rodehorst Bros. v. City of Norfolk Bd. of Adjustment*, 287 Neb. 779, 844 N.W.2d 755 (2014).

[3] *Drought v. Marsh*, 304 Neb. 860, 937 N.W.2d 229 (2020).

[4] *Kaiser v. Western R/C Flyers*, 239 Neb. 624, 477 N.W.2d 557 (1991).

- 329 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
305 NEBRASKA REPORTS
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

Before turning to Hochstein's points of emphasis and the Goedens' and the board's respective responses, we recall governing principles of law.

### GOVERNING PRINCIPLES OF LAW

[4-6] One principle establishes a framework for interpretation: When interpreting zoning regulations, an appellate court applies the same rules utilized in statutory interpretation.[5] Just as statutes relating to the same subject are in pari materia and should be construed together,[6] a county's zoning regulations should be read and construed together. Zoning laws should be given a fair and reasonable construction in light of the manifest intention of the legislative body, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the law as a whole.[7] Nebraska's appellate courts have long followed this principle.[8]

[7] Another principle guides our understanding of specific words: Where the provisions of a zoning ordinance are expressed in common words of everyday use, without enlargement, restriction, or definition, they are to be interpreted and enforced according to their generally accepted meaning.[9] The rule also enjoys a long pedigree.[10]

---

[5] See *Premium Farms v. County of Holt*, 263 Neb. 415, 640 N.W.2d 633 (2002).

[6] See *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

[7] *Rodehorst Bros. v. City of Norfolk Bd. of Adjustment, supra* note 2.

[8] See, *Mossman v. City of Columbus*, 234 Neb. 78, 449 N.W.2d 214 (1989); *City of Lincoln v. Bruce*, 221 Neb. 61, 375 N.W.2d 118 (1985); *City of Beatrice v. Goodenkauf*, 219 Neb. 756, 366 N.W.2d 411 (1985); *Beckman v. City of Grand Island*, 182 Neb. 840, 157 N.W.2d 769 (1968); *Thieman v. Cedar Valley Feeding Co.*, 18 Neb. App. 302, 789 N.W.2d 714 (2010).

[9] *Rodehorst Bros. v. City of Norfolk Bd. of Adjustment, supra* note 2.

[10] See, *Mossman v. City of Columbus, supra* note 8; *City of Lincoln v. Bruce, supra* note 8; *City of Beatrice v. Goodenkauf, supra* note 8; *State v. Smiley*, 182 Neb. 211, 153 N.W.2d 906 (1967); *Henke v. Zimmer*, 158 Neb. 697, 64 N.W.2d 458 (1954); *Thieman v. Cedar Valley Feeding Co., supra* note 8.

- 330 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

[8-10] Several principles naturally follow. Restrictions in zoning ordinances and regulations should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language.[11] In interpreting definitions in zoning statutes or ordinances, the court cannot supply what the municipal legislative body might have provided but which the court cannot by reasonable construction say that it did provide.[12] Thus, in interpreting the language of an ordinance to determine the extent of the restriction upon use of the property, the language must be interpreted, where doubt exists as to the intention of the legislative body, in favor of the property owner and against any implied extension of the restriction.[13]

## Application

Three things are indisputable: The Goedens' proposed building site is located on a "farm," they are the owners of that farm, and that farm constitutes an "agricultural operation[]." As we quoted more fully above, the regulations define "farm" as an "are[a] containing at least forty (40) acres or more which is used for growing of the usual farm products such as . . . grain." Hochstein does not dispute that the Goedens own the tract of land, that it is at least 40 acres in size, and that it is used for the growing of corn and soybeans, which are "grain[s]." Thus, it is a farm. Similarly, the farm fits the definition of an "agricultural operation[]," as it is a farmstead of 40 acres or more that produces $1,000 or more of farm products annually.

From an affidavit the Goedens submitted to the board, Hochstein draws a conclusion and emphasizes a fact. First,

---

[11] *Beckman v. City of Grand Island, supra* note 8.

[12] *Id*.

[13] *Mossman v. City of Columbus, supra* note 8; *Beckman v. City of Grand Island, supra* note 8; *Dowd Grain Co. v. County of Sarpy Bd. of Adj.*, No. A-06-681, 2008 WL 2511150 (Neb. App. June 24, 2008) (selected for posting to court website).

- 331 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

Hochstein asserts, since 2007, "the Goedens have not *farmed* this tract," but instead have "cash leased" it to another corporate entity.[14] In the affidavit, the Goedens assert continuing involvement in the production of grain on the 240-acre farm. Specifically, they state: "In 2007, [they] engaged the services of [a corporate entity] to produce agricultural products on the Farm on a year to year basis. [The Goedens] maintain a supervisory role in the active production of the crops associated with the Farm." Second, Hochstein emphasizes that the Goedens' personal care and raising of pheasants and 11 head of livestock takes place on another site located approximately 3 miles east of the 240-acre farm.

As the board points out, Hochstein at least implicitly argues that because the definition of "agricultural and farm buildings and structures" includes the phrase "residence of the operator," an *owner's* residence is excluded. But this argument ignores the words "but not limited to" following the word "including."

Hochstein explicitly argues, quoting from the definition of "agricultural and farm buildings and structures," that the proposed residence is not "necessary or incidental to the normal conduct o[f] a farm." According to Hochstein, building a new residence is not "necessary" for the Goedens to "sign a lease or cash a rent check."[15] Likewise, Hochstein asserts, it is not "necessary" for the Goedens to construct a residence "over three miles east" of the location where they raise pheasants and 11 head of livestock.[16]

But Hochstein's initial brief ignored the words "incidental to"—the regulation's disjunctive alternative to "necessary." The definition required the board to consider whether the Goedens' proposed residence was "necessary *or incidental to* the normal conduct o[f] a farm." (Emphasis supplied.) In ordinary usage,

---

[14] Brief for appellant at 10 (emphasis supplied).

[15] *Id.*

[16] *Id.*

- 332 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

"incidental to" means "liable to happen to" or "to which a thing is liable or exposed."[17] A definition of "incidental" is "being likely to ensue as a chance or minor consequence."[18]

Both the Goedens and the board point to the A-1 District permitted principal uses, emphasizing that the regulations endorse the "residence of the owners" as a permitted use. The Goedens' proposed residence falls within both of the permitted principal uses quoted above. It is difficult to understand how a permitted principal use in the A-1 District is not at least a use "incidental to" the normal conduct of a farm.

And Hochstein's reply brief merely proclaims that "the use of the [Goedens'] residence is not in any way incidental to agricultural operations."[19] Hochstein does not explain why this is so. Presumably, this argument rests upon the characterization of the Goedens' relationship with the other corporate entity as a cash lease and the Goedens' use of their other farm approximately 3 miles east of the 240-acre farm. Neither is dispositive. We reject Hochstein's notion that the Goedens' residence would not be "incidental to" their 240-acre farm.

To bolster the argument, Hochstein relies upon snippets from the section explaining the intent and purpose of the A-1 District regulations. Those snippets are emphasized in the full quotation of the section above. But we agree with the Goedens and the board that the zoning regulations must be read and construed together. In doing so, we give them a fair and reasonable construction in light of the manifest intention of the legislative body, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the law as a whole. The regulations define "agriculture" as "the use of a tract of land for the growing of crops, . . .

---

[17] "Incidental to," Oxford English Dictionary Online, http://www.oed.com/view/Entry/93467 (last visited Mar. 16, 2020).

[18] Merriam-Webster's Collegiate Dictionary 629 (11th ed. 2014).

[19] Reply brief for appellant at 2.

- 333 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
HOCHSTEIN v. CEDAR CTY. BD. OF ADJUSTMENT
Cite as 305 Neb. 321

including the structures necessary for carrying out farming operations, the residence or residences of those owning or operating the premises, a member of the family thereof, or persons employed thereon, and the family thereof." The Goedens own the 240-acre tract, and their proposed residence falls within that definition.

CONCLUSION

Ultimately, the question is whether the Goedens' new residence is a "non-Farm residence" under the last section of the A-1 District regulations. Construing the zoning regulations as a whole, we hold that it is not. Although the last section of the A-1 District topic could have prohibited the construction of *all* new residences within the distance prescribed by the setback matrix, it did not do so. Because we find no abuse of discretion or legal error by the district court, we affirm its judgment.

Affirmed.