Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

**Dirt Road Development LLC, appellee, v.
Robert Hirschman and Kathryn
Hirschman, appellants.**

___ N.W.3d ___

Filed May 31, 2024.    No. S-23-524.

1. **Zoning: Appeal and Error.** The interpretation of a zoning regulation is a question of law that an appellate court reviews independently of the lower court.
2. **Zoning: Statutes.** When interpreting zoning regulations, a court applies the same rules utilized in statutory interpretation.
3. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.
4. **Statutes.** Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.
5. ____. It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.
6. **Statutes: Legislature: Intent.** In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.
7. **Statutes.** Statutes pertaining to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law, and effect must be given to every provision.
8. ____. To give effect to all parts of a statute, a court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.

9. ____. A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way; otherwise, the statute is unambiguous.

10. ____. A statute can be considered ambiguous when a particular interpretation from the face of a statute could lead to an anomalous, unusual, or absurd result.

11. **Zoning: Intent.** In interpreting the language of a zoning regulation to determine the extent of the restriction upon use of the property, the language must be interpreted, where doubt exists as to the intention of the legislative body, in favor of the property owner and against any implied extension of the restriction. Restrictions in zoning regulations should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language.

12. **Words and Phrases.** An ambiguity is an uncertainty of meaning based not on the scope of a word or phrase but on a semantic dichotomy that gives rise to any of two or more quite different but almost equally plausible interpretations.

Appeal from the District Court for Howard County: MARK D. KOZISEK, Judge. Affirmed.

Stephen D. Mossman and Andrew R. Spader, of Mattson Ricketts Law Firm, for appellants.

Austin L. McKillip and Jessica K. Robinson, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Robert Hirschman and Kathryn Hirschman appeal from the judgment of the district court on cross-motions for summary judgment enjoining them from building and operating a new feedlot in Howard County, Nebraska. The court concluded that under Howard County's zoning regulations, the Hirschmans were required to obtain a conditional use permit because the new feedlot was "adjacent" to other livestock feeding operations owned by the Hirschmans. We affirm.

## BACKGROUND

Dirt Road Development LLC (DRD) brought an action seeking a permanent injunction directing the Hirschmans to "immediately cease and desist from any and all acts in furtherance of construction" of a new feedlot until the Hirschmans receive a conditional use permit from the Howard County Board of Commissioners. Principally, DRD alleged that the Howard County zoning regulations required the Hirschmans to obtain a conditional use permit because, under the regulations, their new feedlot was deemed to be a commercial feedlot. Later, after the new feedlot became operational, DRD filed a motion to supplement its complaint to request that the Hirschmans be enjoined from operating the new feedlot. The district court sustained DRD's motion, and its complaint was supplemented to pray for this additional relief.

Relevant to this appeal, the Hirschmans own the northeast quarter section of section 32, township 14, range 9W, in Howard County, Nebraska. Adjoining the Hirschmans' property to the south is the southeast quarter section of section 32, which is owned by a third party. The Hirschmans operate three feedlot facilities on the northwest, northeast, and southeast corners of their quarter section. These feedlot facilities will be referred to herein as the Hirschmans' "NW feedlot," "NE feedlot," and "SE feedlot."

Immediately south of section 32 is section 5, township 13, range 9W. DRD owns the east half of the northeast quarter section of section 5. Denton Road runs north and south along the eastern boundary of these sections. Accordingly, the Hirschmans' SE feedlot is approximately a half-mile north of DRD's property, separated by the southeast quarter section of section 32.

Immediately east from DRD's property, across Denton Road, is the northwest quarter section of section 4, township 13, range 9W, which the Hirschmans also own. The issue in this case is the Hirschmans' desire to construct and operate a new feedlot facility in the northwest corner of this

quarter section. This facility will be referred to herein as the Hirschmans' "new feedlot."

We have constructed the following simplified diagram reflecting the land at issue in this appeal:



The diagram shows four full sections divided into quarter sections: from left to right, sections 32 and 33 on top and sections 5 and 4 at bottom. Denton Road is marked by a thick black line down the center. In the diagram, the Hirschmans' property is denoted in blue, and their existing feedlots are shown in orange. DRD's property is shown in green. The new feedlot, the primary subject of this action, is denoted in yellow.

It is undisputed that the new feedlot is .513 miles south of the SE feedlot and .863 miles south of the NE feedlot. The parties also do not dispute that the Hirschmans' NE feedlot is a Class I commercial feedlot under the zoning regulations, which means it maintains between 501 and 2,500 animal units. The record also appears to indicate that the parties do not dispute that the Hirschmans' NW feedlot and SE feedlot maintain fewer than 500 animal units. That said, the proper

classification of the Hirschmans' NW feedlot and SE feedlot is disputed. DRD contends, and the record supports, that at the time this action was filed, the SE feedlot was classified by Howard County as a commercial feedlot. However, at least currently, the record shows that the SE feedlot is now classified as a farm feedlot.

The matter came before the district court on cross-motions for summary judgment filed by the parties. The parties agreed that the only issue on summary judgment was whether, under the Howard County zoning regulations, the new feedlot was "adjacent" to the Hirschmans' existing livestock operations when the zoning regulations specifically define "adjacent" as "near to or in the vicinity without touching or bordering upon."[1] If so, the regulations required the Hirschmans to obtain a conditional use permit before constructing and operating the new feedlot.

The district court concluded that the new feedlot was adjacent to the Hirschmans' other feedlots and that therefore, the Hirschmans were required to obtain a conditional use permit to build and operate the new feedlot. Accordingly, the court granted DRD's motion for summary judgment, denied the Hirschmans' motion,[2] and enjoined the Hirschmans "from undertaking any further construction activities associated with, and from operating, [the new feedlot] without first obtaining a Conditional Use Permit from the Howard County Board of Commissioners."

The Hirschmans filed a timely appeal, which we moved to our docket pursuant to Neb. Ct. R. App. § 2-102(C) (rev. 2021).[3]

---

[1] See Howard County, Nebraska, Planning and Zoning Regulation, *Rules and Regulations* § 2 at 35 (rev. 2021).

[2] See Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2022).

[3] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

## ASSIGNMENTS OF ERROR

The Hirschmans assign, summarized and restated, that the district court erred in holding that under the Howard County zoning regulations, their new feedlot was adjacent to their other feedlots and constituted a single commercial livestock operation rather than a separate feedlot, such that the Hirschmans were required to obtain a conditional use permit before constructing and operating the new feedlot.

## STANDARD OF REVIEW

[1] The interpretation of a zoning regulation is a question of law that an appellate court reviews independently of the lower court.[4]

## ANALYSIS

The singular dispute on the parties' cross-motions for summary judgment, and the ultimate question of this appeal, is whether the new feedlot is "adjacent" to—"near to or in the vicinity"[5] of—the Hirschmans' existing livestock operations under the Howard County zoning regulations. Before turning to the merits of the parties' arguments, we first recount our principles of interpretation applicable to zoning regulations and detail the Howard County zoning regulations relevant to this appeal.

### Interpreting Zoning Regulations

[2] When interpreting zoning regulations, a court applies the same rules utilized in statutory interpretation.[6] Therefore, we begin with a review of our principles of statutory interpretation.

---

[4] See *Hochstein v. Cedar Cty. Bd. of Adjustment*, 305 Neb. 321, 940 N.W.2d 251 (2020).

[5] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1, *Rules and Regulations* § 2 at 35.

[6] See *Hochstein v. Cedar Cty. Bd. of Adjustment, supra* note 4.

[3-8] The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[7] Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.[8] It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[9] In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.[10] Statutes pertaining to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law, and effect must be given to every provision.[11] To give effect to all parts of a statute, a court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.[12]

[9,10] A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way; otherwise, the statute is unambiguous.[13] In addition, a statute can be considered

---

[7] *Nebraska Journalism Trust v. Dept. of Envt. & Energy, ante* p. 174, 3 N.W.3d 174 (2024).

[8] *State v. Lear, ante* p. 14, 2 N.W.3d 632 (2024).

[9] *SID No. 596 v. THG Development*, 315 Neb. 926, 2 N.W.3d 602 (2024).

[10] *Id.*

[11] *Id.*

[12] See *id.*

[13] *Id.* See, also, *State v. Albarenga*, 313 Neb. 72, 87, 982 N.W.2d 799, 811 (2022) ("[a] statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari materia with any related statutes").

ambiguous when a particular interpretation from the face of a statute could lead to an anomalous, unusual, or absurd result.[14]

[11] The interpretation of zoning regulations is also informed by general property law. The right to full and free use and enjoyment of one's property in a manner and for such purposes as the owner may choose, so long as it is not for the maintenance of a nuisance or injurious to others, is a privilege protected by law.[15] However, the owner's right to use his or her property is subject to reasonable regulation, restriction, and control by the state in the legitimate exercise of its police powers.[16] Accordingly, in interpreting the language of a zoning regulation to determine the extent of the restriction upon the use of the property, the language must be interpreted, where doubt exists as to the intention of the legislative body, in favor of the property owner and against any implied extension of the restriction.[17] Restrictions in zoning regulations should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language.[18]

## HOWARD COUNTY ZONING REGULATIONS

Howard County's zoning regulations set forth 11 district "Zoning Classifications."[19] It is undisputed that all the Hirschmans' property at issue in this case is within the

---

[14] *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018) (superseded by statute on other grounds as stated in *Castillo v. Libert Land Holdings 4, ante* p. 287, 4 N.W.3d 377 (2024)).

[15] See, *State v. Champoux*, 252 Neb. 769, 566 N.W.2d 763 (1997); *Eckstein v. City of Lincoln*, 202 Neb. 741, 277 N.W.2d 91 (1979); *Stahla v. Board of Zoning Adjustment*, 186 Neb. 219, 182 N.W.2d 209 (1970).

[16] See *id.*

[17] See, *Hochstein v. Cedar Cty. Bd. of Adjustment, supra* note 4; *Beckman v. City of Grand Island*, 182 Neb. 840, 157 N.W.2d 769 (1968).

[18] See *Hochstein v. Cedar Cty. Bd. of Adjustment, supra* note 4. See, also, *Henke v. Zimmer*, 158 Neb. 697, 64 N.W.2d 458 (1954).

[19] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1 at 3. See, also, Neb. Rev. Stat. § 23-114.03 (Reissue 2022).

"Agricultural District"[20] (A-1), while DRD's property is within the "Transitional District" (A-2).[21]

"The purpose of [the zoning regulations] is to encourage the most appropriate use of land, to promote the highest and best use[, to] conserve and stabilize property values, to aid in providing space for public uses, and to promote orderly growth, public health, safety[,] and general welfare."[22] To serve that purpose, the zoning regulations provide for permitted uses, conditional uses, and prohibited uses of land within each zoning classification "[f]or the purpose of providing the most appropriate use of land throughout a district and giving maximum consideration to the character of the district and its peculiar suitability for particular uses in the areas affected by [the] regulations."[23]

"Permitted uses are those uses permitted outright in the district,"[24] whereas conditional uses

> are those that would not be appropriate general[ly] throughout the zoning district without restrictions, but which, if controlled as to number, area, location, size[,] or relation to the district[,] and [sic] would protect the comfort, convenience[,] and appearance, prosperity[,] or general welfare of abutting properties, citizens[,] and the county.
>
> . . . After . . . public hearings by both the Planning Commission and the County Board of Commissioners, the County Board of Commissioners may authorize a Conditional Use Permit in a zoning district, provided it is found that the location and characteristics of the use

---

[20] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1, *"A-1" Agricultural District* § 2 at 87.

[21] *Id., "A-2" Agricultural-Transitional District* § 2 at 107.

[22] *Id.* at 81. See, also, Neb. Rev. Stat. § 23-174.10 (Reissue 2022).

[23] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1, *Districts, Boundaries and Maps* § 7 at 83.

[24] *Id.*, § 7(1) at 83.

will not be injurious to the health, safety, morals[,] and general welfare of the area.[25]

In distinguishing between such uses, the regulations provide in relevant part:

The many uses of land are to[o] numerous to list within the text of each zoning district. Only the most common uses are listed. Additional land uses and the zoning district within which they are allowed either as a permitted use or conditional use are shown within a land use Matrix in [the] front of [the] book [comprising these regulations,] which is a part of these regulations and [has] the same force and effect as if these uses were listed within the zoning district.[26]

As relevant to this case, the land use matrix provides that "[f]eedlots" are a conditional use in zoning districts A-1 and A-2 and a prohibited use in all other zoning districts.[27] In common parlance, "feedlot" means "a plot of land on which livestock are fattened for market."[28]

The zoning regulations provide definitions for words and terms used in the regulations "unless the context clearly indicates otherwise."[29] This section contains two terms specifically related to feedlots: "Feedlot, commercial" and "Feedlot, farm."[30] Both terms are defined as "the feeding, farrowing[,] or raising of [livestock], in a concentrated area where grazing is not possible, [and] where the confinement is for more than [6] months in any [1] calendar year."[31] Under both terms'

---

[25] *Id*., § 7(2) at 83.

[26] *Id*., § 9 at 85.

[27] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1 at 18.

[28] Merriam Webster's Collegiate Dictionary 459 (11th ed. 2020).

[29] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1, *Rules and Regulations* § 2 at 35.

[30] *Id.* at 48, 49.

[31] *Id*. at 48. Accord *id*. at 49.

definitions, "[t]he area of the concentrated feeding operation shall include the pens, corrals, sheds, buildings, feed storage areas, waste disposal ponds[,] and related facilities."[32] The primary distinction between the two definitions relates to the magnitude of the operation, as a "Feedlot, commercial" maintains more than 500 "animal units,"[33] while a "Feedlot, farm" maintains 16 to 500 animal units. Relevant here, the regulations provide that one "[s]teer" equals one animal unit.[34]

The definition of "Feedlot, commercial," but not that of "Feedlot, farm," further provides that "[s]uch facilities shall be constructed and operated in conformance with applicable county, state[,] and federal regulations."[35] In addition, the definition of "Feedlot, commercial," but not that of "Feedlot, farm," provides that "[t]wo or more livestock operations under common ownership are deemed to be a single livestock operation if they are adjacent to each other or if they utilize a common area or system for the disposal of livestock wastes."[36] "Adjacent" is defined in the zoning regulations as "near to or in the vicinity without touching or bordering upon."[37]

Within the text of the zoning regulations pertaining to the A-1 zoning district, and mirrored or incorporated within the text pertaining to the A-2 zoning district, the "[e]xpansion of existing and [the] development of new Commercial Feedlots" require a conditional use permit.[38] Commercial feedlots cannot be "closer to a separate commercial feedlot than the distance requirements for their class[.]"[39] The distance requirements pertain to setback distances of the feedlot

---

[32] *Id.* at 48. Accord *id.* at 49.

[33] See *id.* at 48.

[34] *Id.* at 49.

[35] *Id.* at 48.

[36] *Id.* at 48-49.

[37] *Id.* at 35.

[38] *Id., "A-1" Agricultural District* § 2 at 89.

[39] *Id.* at 90.

facilities, which are ultimately determined by the facilities' "odor footprint[s]."[40] On the other hand, "Farm Feedlots . . . do not require a Conditional Use Permit. They do however follow the [same] 'Odor Footprint' tool using ¼ mile as the setback to the N-NE [(north-northeast)]."[41]

Thus, reading the zoning regulations in pari materia, feedlots are a conditional use of land and require a conditional use permit within the A-1 zoning district. A "Feedlot, farm" is excepted from the conditional use permit requirement, but its facilities are subject to "distance requirements"[42] similar to those for a "Feedlot, commercial."

Accordingly, if the Hirschmans' new feedlot, despite maintaining fewer than 500 animal units, is "adjacent" to—"near to or in the vicinity"[43] of—the Hirschmans' existing livestock operations, the new feedlot is deemed to be an expansion of the Hirschmans' commercial livestock operation and the Hirschmans were required to obtain a conditional use permit. If not, as the Hirschmans maintain, the new feedlot was excepted from the conditional use permit requirement.

## "ADJACENT" LIVESTOCK OPERATIONS

On appeal, the Hirschmans argue that the definition of "adjacent" is ambiguous and that requiring them to follow the procedure to obtain a conditional use permit is inherently a restriction on the use of their property. Therefore, they assert, the interpretation of "adjacent" must be resolved in their favor, such that they were not required to obtain a conditional use permit.

In support, the Hirschmans first contend that when the zoning regulations are read in pari materia, whether livestock

---

[40] See *id.*

[41] *Id.* at 91.

[42] *Id.* at 90.

[43] *Id., Rules and Regulations* § 2 at 35.

operations are "adjacent" such that they are deemed to be a single livestock operation is determined by the requirement that a commercial feedlot be no "closer to a *separate* commercial feedlot than the distance requirements for their class."[44] In other words, the Hirschmans contend that the minimum distance requirement for feedlot facilities serves as the objective distance limit on adjacency. Thereby, the Hirschmans assert that because their new feedlot is beyond the minimum distance requirements of their SE feedlot and NE feedlot, farther away than minimally required, it is de facto a "'separate' feedlot" and "not 'adjacent' to" any of their other operations.[45] They buttress this assertion by pointing to the Merriam-Webster online thesaurus, which lists "separate" as an antonym to "adjacent."[46]

The Hirschmans also argue that the definition of "adjacent" is ambiguous because a determination that their feeding operations are "adjacent" leads to an absurd result.[47] They assert that if their four feedlots are deemed to be a single feedlot, calculating the minimum required "odor footprint" under the zoning regulations for such an irregular feedlot would be impossible. The Hirschmans reason that the result is absurd because the first step of the "odor footprint" calculation is to locate the center of the feedlot, and the center of the single combined feedlot would be located on land that they do not own "located outside the 'area'" of the feeding operation.[48]

---

[44] See *id., "A-1" Agricultural District* § 2 at 90 (emphasis supplied).

[45] Brief for appellants at 13, 15 (emphasis omitted).

[46] "Adjacent," Merriam-Webster.com Thesaurus, https://www.merriam-webster.com/thesaurus/adjacent (last visited May 22, 2024).

[47] See *Wisner v. Vandelay Investments, supra* note 14, 300 Neb. at 850, 916 N.W.2d at 719 ("'"[a] statute can . . . be considered ambiguous when a particular interpretation from the face of a statute could lead to an anomalous, unusual or absurd result"'").

[48] Brief for appellants at 18.

For these two reasons, the Hirschmans maintain that their interpretation of "adjacent," entailing the objective odor footprint inquiry controlling "separate" feedlots mentioned above, is the more reasonable interpretation.

DRD disagrees that "adjacent" is ambiguous. Its argument relies chiefly on the zoning regulations' specific definition of "adjacent" as "near to or in the vicinity" and their explicit exclusion of a requirement that the livestock operations abut or adjoin, i.e., "without touching or bordering upon" one another.[49] DRD contends that under the plain and ordinary meanings of "near to" and "vicinity," reading the zoning regulations in pari materia, and giving general consideration of the whole act, particularly the zoning regulations' purpose, the intent deduced creates no doubt that the Hirschmans' new feedlot is adjacent to their other feedlot operations. Accordingly, DRD maintains that the new feedlot constitutes an expansion of the Hirschmans' existing commercial livestock operation. We agree with DRD.

First, we disagree with the Hirschmans' assertion underpinning their arguments: that farm feedlots are unrestricted permitted uses in the A-1 zoning district. As discussed above, under the zoning regulations, permitted uses are those permitted outright in the district. The land use matrix provides that "Feedlots"[50] are a conditional use, and a "Feedlot, farm"[51] is still subject to the zoning regulations' odor footprint requirements and cannot be closer to separate feedlots than provided by the zoning regulations. Accordingly, the zoning regulations restrict farm feedlots to control their number, area, location, size, and relation to protect the comfort, prosperity, and general welfare of Howard County and its citizens. Farm

---

[49] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1, *Rules and Regulations* § 2 at 35.

[50] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1 at 18.

[51] *Id., Rules and Regulations* § 2 at 49.

feedlots fall squarely within the zoning regulations' definition of a conditional use.[52]

In addition, we note that there is no merit to the Hirschmans' argument that "adjacent," as used in the zoning regulations, is an antonym of "separate." Although the Merriam-Webster online thesaurus does list "separate" as an antonym for "adjacent," that entry defines "adjacent" as "adjoining" or "having a border in common."[53] Because the zoning regulations' definition of "adjacent" explicitly excludes a requirement of "touching or bordering upon," that entry is inapplicable to the matter at hand.[54]

We also reject the Hirschmans' contention that the setback requirements for "separate"[55] feedlots control the determination of whether "[t]wo or more livestock operations"[56] are "near to or in the vicinity"[57] of one another. It is not within the province of a court to read a meaning into a statute that is not warranted by the language.[58] As the district court noted, the zoning regulations do not provide a purely objective measure of what constitutes "adjacent." The court reasoned:

> The zoning regulation[s] could have defined adjacent in terms of a quantified distance, *e.g.*[,] 1,500 feet. They could have defined adjacent solely in terms of a common area or system for the disposal of livestock wastes. They could have provided that feeding operations separated

---

[52] See, also, *id.* at 36 (providing term "Agriculture" does "not include feedlots") and 48 (providing term "Farming" does not include feeding of livestock of more than specified animal units per acre).

[53] Merriam-Webster.com Thesaurus, *supra* note 46.

[54] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1, *Rules and Regulations* § 2 at 35.

[55] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1, *"A-1" Agricultural District* § 2 at 90.

[56] *Id., Rules and Regulations* § 2 at 48.

[57] *Id.* at 35.

[58] *SID No. 596 v. THG Development, supra* note 9.

by a road are not adjacent. The regulations could have provided that feedlots separated by property owned by another are not adjacent. They could have provided that feedlots within the setback distances for separate feedlots are adjacent. However, the Zoning Regulations did none of those things.

Had the regulations sought to define separate livestock operations under common ownership by the minimum distance requirements for "separate" feedlots, they could have done so. They did not.

[12] Contrary to the Hirschmans' argument, ambiguity is not created merely because the zoning regulations do not articulate an objective standard. In determining whether a statute or regulation is ambiguous, a court's inquiry is focused on the meaning of the language, not whether the law provides a hardline rule.[59] As Black's Law Dictionary succinctly states, an ambiguity is "[a]n uncertainty of meaning based not on the scope of a word or phrase but on a semantic dichotomy that gives rise to any of two or more quite different but almost equally plausible interpretations."[60] In the Hirschmans' case, the issue is not that "near to or in the vicinity" is susceptible of more than one reasonable interpretation or cannot be adequately understood; instead, the Hirschmans' arguments take issue with the flexible standard the zoning regulations unambiguously provide.

The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[61] The zoning regulations provide that the purpose of a conditional use permit is to control uses to "protect the comfort, convenience[,] and appearance, prosperity[,] or general welfare" of

---

[59] See, *id. State v. Albarenga, supra* note 13; *Wisner v. Vandelay Investments, supra* note 14.

[60] Black's Law Dictionary 101 (11th ed. 2019).

[61] *Nebraska Journalism Trust v. Dept. of Envt. & Energy, supra* note 7.

the county and its citizens.[62] In service of that purpose, a conditional use permit may be authorized if "it is found that the location and characteristics of the use will not be injurious to the health, safety, morals[,] and general welfare of the area."[63] That is why a conditional use permit "may stipulate and require such conditions and restrictions upon the conditional use and operation as is deemed necessary for the protection of the public interest and to secure compliance with [the zoning] regulations."[64]

We have long recognized that the word "adjacent" ordinarily means lying near, close, or contiguous and does not require physical contact, like the word "adjoining" does.[65] "Adjacent" itself means "not distant" or "nearby."[66] Meanwhile, "near" means "close to"[67] and "vicinity" means "a surrounding area or district" or "neighborhood."[68] Whether two things are adjacent must be determined by "the factual situation disclosed by the record."[69] We cannot say that land areas separated by a single quarter section are not near to each other in a rural "agricultural district" in Nebraska.

---

[62] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1, *Districts, Boundaries and Maps* § 7(2) at 83.

[63] *Id*., § 7(2)(a) at 83.

[64] *Id*., § 7(2)(b)(3) at 83-84.

[65] See, e.g., *Pickens v. Maryland Casualty Co.*, 141 Neb. 105, 2 N.W.2d 593 (1942).

[66] Merriam Webster's Collegiate Dictionary, *supra* note 28 at 16.

[67] *Id.* at 828.

[68] *Id.* at 1393.

[69] *Mader v. Mettenbrink*, 159 Neb. 118, 127, 65 N.W.2d 334, 342 (1954). See, *Walla v. Oak Creek Township*, 167 Neb. 225, 92 N.W.2d 542 (1958); *School Dist. No. 49 v. Kreidler*, 165 Neb. 761, 87 N.W.2d 429 (1958). See, also, *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416 (2010); *In re Trust of Cease*, 267 Neb. 753, 677 N.W.2d 495 (2004); *Lovelace v. Stern*, 207 Neb. 174, 297 N.W.2d 160 (1980); *Rickertsen v. Carskadon*, 172 Neb. 46, 108 N.W.2d 392 (1961); *Bahm v. Raikes*, 160 Neb. 503, 70 N.W.2d 507 (1955).

Moreover, we cannot say that livestock operations separated by a single quarter section are not in the same vicinity. At each location, the Hirschmans are engaged in "the feeding[,] farrowing[,] or raising of [livestock], in a concentrated area where grazing is not possible."[70] As DRD notes in its appellate brief:

> Clusters of feedlots like the Hirschmans' [sic] have constructed, and here expanded, are problematic for several reasons. For example, the owner of a cluster of feedlots like the Hirschmans' is likely to scrape them and dispose of the solid animal waste upon [other] adjacent property, thereby amplifying the impact upon adjacent landowners beyond that which would have been experienced with a single Farm Feedlot. Similarly, given the feedlots' proximity to each other and their common ownership, the Hirschmans will certainly move cattle between the feedlots[,] and delivery and hauling will happen around the same time. All of these processes involve heavy equipment and increased use of the road between the feedlots.
>
> This increased traffic affects the safety of other drivers on the roads, especially since DRD's abutting property [to the new feedlot] is zoned for, and approved by the Howard County Planning and Zoning Commission to be, a residential subdivision. Moreover, the increased road traffic between the feedlots will require increased amounts of road maintenance by the County in order to properly and safely maintain the road. This is both a relevant safety and financial concern. None of these concerns would be present in the absence of common ownership of the subject feedlots. None of these concerns were considered by the County due to the Hirschmans' circumvention of the Conditional Use Permitting process.[71]

---

[70] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1, *Rules and Regulations* § 2 at 48. Accord *id*. at 49.

[71] Brief for appellee at 17.

DRD discusses a hypothetical or theoretical factual situation, none of which is supported by the record. However, by going through the process of obtaining a conditional use permit, the factual situation of the Hirschmans' feeding operation and their facilities would be before Howard County's planning commission and its board of county commissioners. Based on that process, those bodies would be able to determine if additional conditions and restrictions upon the Hirschmans' operation are necessary. There can be no doubt that the zoning regulations intend to require an operation such as the Hirschmans' to go through the conditional use permitting process.

We also reject the Hirschmans' argument that deeming their feedlots to be a single livestock operation leads to an absurd result. Even though their new "farm feedlot" is subject to the conditional use permitting process, the zoning regulations do not require the Hirschmans to locate the center of a combined single feedlot made up of their four feedlot locations. Contrary to the Hirschmans' argument, the zoning regulations do not provide minimum distance requirements for a feedlot *operation*. Instead, reading the applicable "minimum sanitation and odor practices"[72] requirements in pari materia with the definitions of "Feedlot, commercial" and "Feedlot, farm," the distance requirements establish minimum requirements for a feedlot's *facilities*.[73] We refuse to read the distinction between "facilities" and "operation" within the definition of "Feedlot, commercial" as superfluous or meaningless. When this distinction is recognized, a harmonious and sensible reading results.

The express purpose of a conditional use permit is for the planning commission and board of county commissioners to consider "*additional* conditions as may be needed to provide for the protection of the environment and the minimum

---

[72] Howard County, Nebraska, Planning and Zoning Regulation, *supra* note 1, *"A-1" Agricultural District* § 2 at 89.

[73] See *id., Rules and Regulations* § 2 at 48, 49.

intrusion upon neighboring properties."[74] Providing an opportunity for these bodies to decide whether additional conditions are needed considering the Hirschmans' total operation does not make it impossible for the Hirschmans to calculate the minimum distance requirements applicable to their new feedlot's facilities. Certainly, serving the zoning regulations' intended purpose of requiring a conditional use permit does not lead to an absurd result.

Even assuming the Hirschmans are correct in their contention that a conditional use permit is a restriction upon the use of property, an issue we need not determine in this appeal, it cannot be said that such restriction is not clearly within the scope of the purpose and intent manifest in the zoning regulations' language. Otherwise, the very purpose of the Howard County zoning regulations and conditional use permits would be circumvented.

## CONCLUSION

The term "adjacent" as used within the zoning regulations, defined as "near to or in the vicinity,"[75] is unambiguous. The zoning regulations provide that adjacent commonly owned feedlot operations, such as the Hirschmans', are deemed to be a single feedlot operation. Accordingly, the Hirschmans were required to obtain a conditional use permit for their new feedlot. We affirm the judgment of the district court granting DRD's motion for summary judgment and enjoining the Hirschmans from operating their new feedlot without first obtaining a conditional use permit from the Howard County Board of Commissioners.

Affirmed.

Papik, J., not participating.

---

[74] *Id., "A-1" Agricultural District* § 2 at 92 (emphasis supplied).

[75] *Id., Rules and Regulations* § 2 at 35.