Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/31/2024 09:06 AM CDT

IN RE ESTATE OF BRENT L. MCCORMICK, DECEASED.
TRACY MCCORMICK, TEMPORARY PERSONAL REPRESENTATIVE
OF THE ESTATE OF BRENT L. MCCORMICK, APPELLANT,
v. BETH ROBERTS, APPELLEE.

___ N.W.3d ___

Filed October 31, 2024.    No. S-23-726.

1. **Decedents' Estates: Appeal and Error.** Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record.

2. **Judgments: Statutes: Appeal and Error.** When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.

3. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.

4. **Statutes.** Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.

5. ____. It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

6. **Statutes: Legislature: Intent.** In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.

7. **Statutes.** Statutes pertaining to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law, and effect must be given to every provision.

8. ____. To give effect to all parts of a statute, a court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.

9. **Legislature: Intent.** The intent of the Legislature is expressed by omission as well as by inclusion.

Appeal from the County Court for Washington County, Francis W. Barron III, Judge. Affirmed.

Kathleen S. Pallesen, of Spethman Pallesen Law Offices, L.L.C., for appellant.

Michael J. Tasset, of Johnson & Mock, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Tracy McCormick, the temporary personal representative of the Estate of Brent L. McCormick, appeals the order of the county court for Washington County in which the court determined that Brent's biological daughter, Beth Roberts (Beth), was entitled to inherit from him under the intestate statutes, despite the termination of Brent's parental rights. Tracy claims that under the relevant statutes, the termination of Brent's parental rights extinguished Beth's right to inherit from him. We determine that Beth's right to inherit was not extinguished, and therefore, we affirm the order of the county court.

## STATEMENT OF FACTS

Brent died intestate on May 6, 2023. Brent's domicile at the time was in Arlington, Nebraska. On June 16, Brent's sister-in-law, Tracy, filed in the county court a petition for formal probate, in which she, inter alia, requested to be appointed as personal representative. In the petition, Tracy listed Brent's father, mother, and brother as the only known heirs and interested parties.

On June 28, 2023, Beth filed a demand for notice of all filings in the probate case, and she alleged that she was the

natural daughter and lawful heir of Brent. Beth later filed an objection to Tracy's petition on the basis that it failed to list Beth as a child or heir. Beth alleged in the objection that she was the only child and sole heir of Brent.

The county court held a hearing on July 20, 2023, on both Tracy's petition and Beth's objection. At the end of the hearing, the court appointed Tracy as temporary personal representative of Brent's estate, and it granted a motion for briefing regarding Beth's objection. Following briefing, the county court filed an order on August 29 in which it determined that Beth was permitted to inherit from Brent.

In its order, the county court set forth the following undisputed facts. Beth is the biological daughter of Brent, and Brent's paternity was established during his lifetime by the district court for Washington County on August 7, 1991. The district court terminated Brent's parental rights on July 10, 1992. Beth spent a "very minimal" amount of time with Brent after his parental rights were terminated. Beth was not adopted by anyone after Brent's parental rights were terminated. Brent was not married and had no other children when he died intestate.

The county court began its analysis by determining that for purposes of the Nebraska Probate Code, see Neb. Rev. Stat. § 30-2309 (Reissue 2016) (generally concerning intestate succession as applied to parents and children), Brent's paternity as to Beth had been established by an adjudication as reflected by the district court's order of August 7, 1991. The court noted, however, that § 30-2309 made "no mention of the effect of a termination of parental rights" on the right of a child to inherit from the terminated parent. The court stated instead that the effect of termination of parental rights was addressed in Neb. Rev. Stat. § 30-2312.02 (Cum. Supp. 2022). The court noted that § 30-2312.02 "only discusses the parent not being able to inherit from the child" but is "silent as to whether a child may inherit after the parental rights have been terminate[d]."

The court then looked at statutes regarding family law. Neb. Rev. Stat. § 43-106.01 (Reissue 2016) relates to relinquishment of parental rights and provides in part, "Nothing contained in this section shall impair the right of such child to inherit." The court stated that § 30-2312.02 and § 43-106.01 were "similar in the fact that the end result[] is that the rights of the parent to the child are extinguised" and both statutes "do not allow the Parent to inherit from the child." The court recognized that § 43-106.01 specifically states that it does not impair the right of the child to inherit, while § 30-2312.02 does not specifically state as such. But the court reasoned that it was "difficult to believe that the Legislature would allow the child to inherit if there was a relinquishment of parental rights but not a termination of parental rights."

The county court rejected Tracy's citation of *In re Estate of Luckey. Bailey v. Luckey*, 206 Neb. 53, 291 N.W.2d 235 (1980), in support of her argument that Beth was not allowed to inherit from Brent. In *Luckey*, this court held that under § 30-2309, "a twice-adopted child may not inherit under the laws of intestacy from its first adoptive parent who has thereafter consented to the second adoption and relinquished all rights of a parent as to the child." 206 Neb. at 58, 291 N.W.2d at 238. The county court stated that it did not find *Luckey* persuasive and distinguished the case on the basis that the child in that case was adopted, whereas Beth was never adopted.

Based on its review of the statutes set forth above, the county court determined that "a biological child is allowed to inherit when parental rights are terminated." The court therefore concluded that Beth was permitted to inherit from Brent.

Tracy appeals the county court's order in which it determined that Beth was entitled to inherit from Brent.

## ASSIGNMENT OF ERROR

Tracy claims that the county court erred when it concluded that a biological child is allowed to inherit from a parent whose parental rights have been terminated.

## STANDARDS OF REVIEW

[1,2] Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023). When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Konsul v. Asensio*, 316 Neb. 874, 7 N.W.3d 619 (2024).

## ANALYSIS

[3-8] The issue in this appeal involves a matter of statutory interpretation: whether a biological child may inherit under the intestate statutes from a parent whose parental rights have been terminated. We therefore review rules of statutory construction. The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent. *Dirt Road Development v. Hirschman*, 316 Neb. 757, 7 N.W.3d 438 (2024). Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning. *Id*. It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute. *Id*. In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately. *Id*. Statutes pertaining to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law, and effect must be given to every provision. *Id*. To give effect to all parts of a statute, a court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible and will avoid rejecting as superfluous or meaningless any word, clause, or sentence. *Id*.

The ultimate question in this case is whether Beth is entitled to inherit from Brent. It is undisputed that Brent died intestate, and therefore, we look to the section of the Nebraska Probate Code governing intestate succession. It is also undisputed that Brent was not married at the time of his death and that therefore, there is no surviving spouse. The disposition of Brent's intestate estate therefore is governed by Neb. Rev. Stat. § 30-2303 (Reissue 2016), which provides in relevant part that "the entire intestate estate if there is no surviving spouse, passes [first] to the issue of the decedent." Section 30-2303 further provides for division of the intestate estate if the issue of the decedent includes more than one person. It is undisputed that Brent had no children other than Beth.

We therefore look to other provisions of the Nebraska Probate Code to determine whether Beth qualifies as "the issue of" Brent entitled to inherit from him pursuant to § 30-2303(1). We look first to Neb. Rev. Stat. § 30-2209(23) (Reissue 2016), which defines "[i]ssue of a person" to include "all his or her lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in the Nebraska Probate Code." Within the Nebraska Probate Code, § 30-2309 defines the relationship of parent and child for the specific purpose of intestate succession. Section 30-2309 provides in relevant part:

> If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person,
>
> . . . .
>
> (2) . . . a person born out of wedlock is a child of the mother. That person is also a child of the father, if:
>
> . . . .
>
> (ii) the paternity is established by an adjudication before the death of the father or is established thereafter by strict, clear and convincing proof. The open cohabitation of the mother and alleged father during the period

of conception shall be admissible as evidence of pater-
nity. The paternity established under this subparagraph
(ii) is ineffective to qualify the father or his kindred to
inherit from or through the child unless the father has
openly treated the child as his, and has not refused to
support the child.

It is undisputed in this case that Beth is the biological
daughter of Brent and that Brent's paternity was established by
an adjudication in the district court in 1991. Therefore, under
§ 30-2309, a relationship of parent and child between Brent
and Beth was established for purposes of intestate succession,
and under the definition of "[i]ssue" set forth in § 30-2209(23),
a relationship of parent and child between Brent and Beth was
established pursuant to the relevant statute "contained in the
Nebraska Probate Code."

While it is therefore clear that after the paternity adjudi-
cation in 1991, a relationship of parent and child had been
established between Brent and Beth, it is also undisputed in
this case that Brent's parental rights to Beth were terminated
in 1992. The next question then is what effect, if any, the ter-
mination of Brent's parental rights had on the relationship of
parent and child for purposes of the statutes governing intes-
tate succession. As the county court noted, § 30-2309 makes
no mention of what effect a termination of parental rights has
with respect to the relationship of parent and child established
thereunder. Section 30-2309(2)(ii) specifies that the estab-
lishment of a relationship of parent and child thereunder "is
ineffective to qualify the father . . . to inherit from or through
the child" unless the father meets certain requirements, and it
appears that a father whose parental rights have been termi-
nated would ordinarily not meet such requirements. Section
30-2309, however, imposes no additional requirements for a
child to be qualified to inherit from or through the father.

The Legislature specifically addressed termination of paren-
tal rights in § 30-2312.02, which provides:

(a) A parent is barred from inheriting from or through a child of the parent if the parent's parental rights were terminated and the parent-child relationship was not judicially reestablished.

(b) For the purpose of intestate succession from or through the deceased child, a parent who is barred from inheriting under this section is treated as if the parent predeceased the child.

Like § 30-2309(2)(ii), which imposes additional requirements for a father to inherit but does not impose additional requirements for a child to inherit, § 30-2312.02 specifies the effect of a termination of parental rights on the parent's right to inherit from or through the child, but it does not specify the effect of such termination on the child's right to inherit from the parent whose parental rights have been terminated.

Thus, the probate statutes reflect a clear intent to limit or extinguish the right of a parent to inherit from a child under the circumstances set forth but do not reflect an intent to limit or extinguish the right of a child to inherit from the parent under the same circumstances. This treatment aligns with statutes outside the Nebraska Probate Code. For example, Neb. Rev. Stat. § 43-293 (Reissue 2016) addresses termination of parental rights and provides in relevant part, "An order terminating the parent-juvenile relationship shall divest the parent and juvenile of all legal rights, privileges, duties, and obligations with respect to each other and the parents shall have no rights of inheritance with respect to such juvenile." Section 43-293 shows a clear intent that a parent whose parental rights have been terminated may not inherit from the child, but it expresses no intent that the child, or juvenile, similarly has no right to inherit from the parent.

Tracy contends that under § 43-293, an order terminating parental rights divests both the parent and the child of "all legal rights," including the right of inheritance from the other. We reject this contention. Because § 43-293 specifically provides that the parent shall have no rights of inheritance

with respect to the juvenile, we interpret the statute as not including rights of inheritance within the "legal rights, privileges, duties, and obligations" of which both the parent and juvenile are divested. To give effect to all parts of a statute, a court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible and will avoid rejecting as superfluous or meaningless any word, clause, or sentence. *Dirt Road Development v. Hirschman*, 316 Neb. 757, 7 N.W.3d 438 (2024). It would be superfluous to separately address inheritance rights of parents if inheritance rights were included in the rights addressed in the first part of the same sentence regarding both parents and juveniles. We therefore do not read § 43-293 to divest the juvenile, or child, of the right to inherit from a parent whose parental rights have been terminated.

In another statute outside the Nebraska Probate Code, a clear intent was expressed regarding the right of a child to inherit. The county court cited § 43-106.01, which provides:

> When a child shall have been relinquished by written instrument, as provided by sections 43-104 and 43-106, to the Department of Health and Human Services or to a licensed child placement agency and the agency has, in writing, accepted full responsibility for the child, the person so relinquishing shall be relieved of all parental duties toward and all responsibilities for such child and have no rights over such child. Nothing contained in this section shall impair the right of such child to inherit.

[9] Tracy argues in part that if the Legislature had intended that a child's right to inherit would not be impaired by termination of a parent's parental rights, it would have explicitly stated so, as it did in § 43-106.01. However, we have stated that the intent of the Legislature is expressed by omission as well as by inclusion. *In re Estate of Giventer*, 310 Neb. 39, 964 N.W.2d 234 (2021). As relevant to the question in this case, we note that when the Legislature enacted § 30-2312.02 to provide that a parent whose parental rights have been

terminated is barred from inheriting from or through the child, it did not include a provision that the child was similarly barred from inheriting from the parent.

We finally note that § 30-2309(1) provides that "an adopted person is the child of an adopting parent and not of the natural parents." In § 30-2309(1), the Legislature expressed an intent that adoption is an event that ends the adopted child's status as the child of a natural parent for purposes of intestate succession. Unlike adoption, the Legislature does not appear to have expressed an intent that termination of a natural parent's parental rights is an event that ends the child's status as "issue" of that parent for purposes of taking under intestate succession. Regarding the present case, it is undisputed that Beth was not adopted after Brent's paternity was established or after his parental rights were terminated and, obviously, that she is not barred from inheriting under § 30-2309(1).

In summary, § 30-2303(1) provides for an intestate decedent's estate to pass to "issue," § 30-2209(23) defines "[i]ssue" based in part on the relationship of parent and child as determined under the Nebraska Probate Code, and § 30-2309(2)(ii) of the Nebraska Probate Code provides that for purposes of intestate succession, a relationship of parent and child is established by a paternity adjudication for a child born out of wedlock. Although probate statutes and other statutes specifically provide that termination of parental rights divests a parent of inheritance rights with respect to a child, no statute specifically provides that termination of a parent's parental rights extinguishes the inheritance rights of the child as to that parent. Reading these statutes together, we agree with the county court's determination that under the Nebraska Probate Code, as applied to the undisputed facts of this case, Beth was "issue" of Brent and therefore eligible to inherit from him pursuant to the statutes governing intestate succession.

## CONCLUSION

We conclude that under the probate statutes, Beth was Brent's issue and therefore entitled to inherit from him under

the intestate statutes. We find nothing in the probate statutes that provides that such right of inheritance was extinguished when Brent's parental rights were terminated. The county court therefore did not err when it determined that Beth was entitled to inherit from Brent. We affirm the order of the county court.

Affirmed.